Gaston, Judge,
 

 after stating the case as above set forth, proceeded: — The interlocutory order for an account having never been reheard, nor prayed to be reheard, ought to be viewed as a declaration that the plaintiffs are entitled to the account prayed for, and of course to the share of the negroes, in relation to which the account was asked. But as this point has not been
 
 *187
 
 pressed here in argument, and as it is not improbable that the order may have been made merely to speed the final decision, we have examined into the merits of the case, upon the allegations and proofs.
 

 The execution of the articles and bond exhibited with the bill, is
 
 barely
 
 not admitted by the defendant Wilson, This vague manner of denial is always received by the Court unfavourably. A defendant is not at liberty thus to put in issue allegations, which he mav fullv believe to be true, and thereby take the chances-of .the plaintiff’s being unable to establish them by strict proof. He is bound to answer, not only as to his knowledge,JRut as to his information and belief. But the execution is fully provéd William Wood, who drew up the writings at the request of all the parties, and who saw them executed, and attested ‘ ... the execution as a subscribing witness.
 

 An allegation is faintly intimated in the answer of William Bailey, Senr., that the compromise testified by these writings, w'as made upon condition that the same should not be operative, if opposition were made on the part of any of the next of kin to the -probate of Thomas Bailey’s will. If such a defence were intended, it was incumbent on the party to bring it forward distinctly. It is inconsistent with 'that reverence for truth, which- is required from those who answer upon oath, as well as with the rules of pleading, for a defendant to express himself obscurely in his answer, and leave to the Court the task of divining his meaning. Whenever this course is pursued, the Court adopts that construction of the language which is strongest against him. The defendant says that he acceded to the arrangement, under the belief and expectation that it would put an entire end to-the controversy. What
 
 controversy
 
 does he refer to ? The only one mentioned in the previous part of the answer is “a dispute between the brothers,” in relation to the will. The answer further states that James Plunkett, .one of the next of kin, caveated the will; that an issue -was thereupon made up, and the will established at October term, 1802, of Anson Court. The
 
 whole
 
 truth, in relation to this caveat, is not set forth. An.exhibit is produced, showing, that at the term aforesaid, a caveat was entered by James Plunkett;
 
 *188
 
 an issue made up; the issue found against the caveator; a
 
 new trial
 
 of the issue awarded by the Court, and then a withdrawal of the caveat by the caveator.
 

 And if not taken in the answer, it cannot be urged on the hearing.
 

 The Court does not consider this defence open to the defendant, if it could be proved, because it is not
 
 taken
 
 in his answer. Proofs must be confined to the allegations of the parties. But it is unsustained by the proofs. The only testimony tending to establish it, is that of Catharine Bailey, who, in answer to an interrogatory whether she “ understood that the bonds were to
 
 stand in full force,
 
 if no other heir came forward to break the will
 
 V’
 
 answers, that she heard them, the four brothers, say so. It would be a
 
 violent
 
 inference from.this, that they had agreed that it should be utterly null, if any one set up an ineffectual opposition. But this witness does not represent herself as being present at the agreement of compromise, or actually knowing the full intent of the parties ; nor does she state when she heard this declaration ; but says further, that
 
 she
 
 also took a
 
 bond
 
 at the same time, for some of the moveable property of her father, (the testator); that she has not, indeed, got the property, but that she put the bond into the hands of a legal gentleman, for the purpose of being enforced, and does not know whether any, or, if any, what steps have been taken upon-it. Her acts seem to show that she did not x’egard her bond as avoided by Plunkett’s caveat. William Wood, however, who drew up both the writings, under the directions of the parties, has been examined upon this point by the defendants; and he states, that the agreement was, indeed, entered into, to prevent a controversy respecting their father’s will, but that he did not understand that the agreement should not be binding in case the probate should be opposed by others. It is probable that no opposition was apprehended, except from the dissatisfied brothers ; and also very probable that the ineffectual opposition set up, was withdrawn, because of the compromise between the brothers.
 

 It is objected, that the agreement of compromise was wholly voluntary, and that- a Court of Equity will not enforce its specific execution. Where there is a fair doubt as to the rights of parties, an agreement entered into
 
 *189
 
 without fraud, for the compromise of those rights, is not a voluntary agreement, and is a fit subject for the jurisdiction of a Court of Equity. We should, however, have great difficulty in enforcing this agreement, merely as a compromise of
 
 doubtful rights,
 
 for the bill sets forth
 
 no rights
 
 as claimed by the plaintiffs, in opposition to those derived under the will. There is no averment of any matter which should render the validity of the will doubtful, but only of an intention on the part of the dissatisfied brothers, to contest its probate. It seems to us, that i,n order to make out a case of a compromise of doubtful rights, it was necessary to state what were the alleged rights, in regard to which the doubts existed. But it is not exclusively on this ground that the claim of the plaintiffs rests. The agreement was confessedly entered into for the purpose of quieting disputes between the children of the same father, in relation to the disposition of his property; it is apparently equal; it is not denied to be fair; and was deliberately assented to- as a proper and just family arrangement. Such arrangements are upheld by considerations, affecting the interests of all the parties, often far more weighty than any considerations simply pecuniary.
 
 Stapilton
 
 v.
 
 Stapilton,
 
 1 Atk. 10.
 
 Cary
 
 v.
 
 Cary,
 
 1 Ves. 19.
 
 Pullen
 
 v.
 
 Ready,
 
 2 Atk. 292.
 

 where no particular time is f,fed for tion of an butft™6”1’ most im
 
 *190
 
 portant cannot be3 carried into afterthe death of a thenliv-ing, no presumption of abandonment will arise from delay during the life of such person, although some minor parts of the agreement can be executed during such lifetime.
 

 
 *189
 
 The defendant, William Bailey, sets up by way of defence, that he believed that John Bailey, knowing that the articles had been executed without consideration, had abandoned all expectation of benefit from them; and objects to him or his assignees, now enforcing them after such delay and acquiescence. No particular facts of acquiescence are stated; nor is there any averment that the parties to the arrangement had waived it, or agreed that it should be inoperative. Unless then an abandonment of the agreement is to be presumed according to the rules of the Court, this objection is unavailing. Under the circum- „ , . stances of the case we cannot infer such an abandonment, There was no time appointed for the execution of the agreement, but the most material parts of the agreement could not be executed until the death of the testator’s widow; and'the bill was brought promptly after her
 
 *190
 
 death. No inconvenience is shown to have been sustained by the defendant, because of a bill not having been brought in the lifetime of the widow to have the agreement established, and such parts of it as were then in a state to be performed, carried into execution. The plaintiffs complain of no wrong, and ask for no account before the death of the widow; and there is nothing shown from which we can infer that either they, or John Bailey, to whom they succeeded, anticipated any resistance to the claim until the moment when they sought the practical benefit of it.
 

 The defendant, Wilson, insists, that the negroes which came to his possession as administrator of James Bailey, and therefore subject to the trust which the plaintiffs charge, are now
 
 his
 
 property, freed and discharged from the trust. The Court thinks this defence not sustained. It appears from the report of the commissioner in the Court below, that these negroes came to the possession of Wilson on the 17th of October, 1825. He is expressly charged in the bill with notice of John Bailey’s claim, and in his answer does not deny, but impliedly admits it, and sets forth a
 
 fact
 
 which is
 
 prima facie
 
 evidence of it. He denies that he
 
 knew
 
 of the execution of the writings, and prays that strict proof may be required thereof, but states that he got the negroes from the
 
 possession of John Bailey.
 
 The transactions on which he relies as operating a transfer to him of the property in the slaves, took place some time between October, 1825, and the Fall term of 1826, of Anson Superior Court. If these were in truth what they purport to be, the trust would still attach to the negroes in his hands, because he
 
 had notice
 
 of the trust. But we have no difficulty in pronouncing them merely colourable. He denies that there was “ any agreement entered into between him and Parsons for the purchase of the slaves before the sale;” but considering the general evasive character of the answer, and the circumstances of the case, we are constrained to believe that he attempts to shelter his conscience behind the
 
 literal
 
 sense of these words. He sets forth no reason for making the sale; shows no note taken from Parsons on
 
 his
 
 pretended pur
 
 *191
 
 chase; avers no change of possession ; and states neither the price or terms of his alleged repurchase. He has taken - Parson's deposition, which is
 
 very
 
 unsatisfactory. This witness states that he bought the negroes at a price exceeding their value by forty-five dollars ; and that Wilson did not
 
 apply
 
 to him to bid them off. This is the whole explanation given on the subject. Why he bid them off at forty-five dollars more than hé thought they were worth; whether he purchased in truth for himself, and intending to hold them as his own; whether he gave any note, or took the possession; whether he resold them to Wilson, and if so, when and for what price? On all these very natural subjects of inquiry he is wholly silent. We believe that there was in truth no sale, no repurchase; that the whole was a trick executed, not perhaps by means of a direct agreement between the defendant and Parsons, but of a well understood arrangement effected through the medium of some third person. -
 

 Upon the whole matter, the Court is of opinion, that the plaintiffs are entitled to a decree establishing the agreement evidenced by the articles and bond of 1802, as a fair family arrangement, which is proper for. the execution of this Court, and which has never been abandoned; to an account of the negroes, the subject of that arrangement; and to an account of the profits of the said negroes, and of the share of the plaintiffs in the land, also the subject of that arrangement, since the 5th day of January, 1826, when the defendant, John Bailey, conveyed his interest therein to the plaintiff, as appears from- his deeds exhibited in the cause and duly proved.
 

 Pee CüRIam. Decree accordingly.