KATIE SCHULTZ v. MICHAEL W. BRENNAN AND ANOTHER. ANNA CALEY, INTERVENER.[1]

October 25, 1935.

No. 30,486.

[1]Reported in 262 N. W. 877.

302

*Earl J. Maxwell,* for appellants.

*Ueland & Ueland* and *William T. Evans,* for plaintiff and intervener, respondents.

JULIUS J. OLSON, JUSTICE.

Mary McCarty, a resident of Minneapolis, died testate there February 21, 1932. She was survived by the children of two brothers who predeceased her, also by the brother Michael W. Brennan, one

of defendants, by Katie Schultz, the plaintiff, and Anna Caley, intervener herein, sisters. On May 9, 1929, she executed her last will. This instrument was offered for probate on February 24, 1932, and on March 21 the court made an order admitting the same and appointing said Michael W. Brennan sole executor, he having been so named in the will. The will provides for several specific bequests, amongst which there was one of $500 to the plaintiff. The remainder or residuary estate was devised and bequeathed to Mr. Brennan two-thirds, and to Anna Caley, the intervener, one-third.

Mrs. McCarty's funeral took place in Iowa on February 23, 1932. At that time the parties to this action were present. The following morning Mr. Brennan informed plaintiff and intervener about his sister's will. Plaintiff at once protested and forcefully asserted that the will had been procured by means of undue influence on the part of Mr. Brennan and gave notice that she would take steps to oppose the probate thereof if it was offered for probate. Much discussion thereafter ensued extending over a period of nearly two weeks but finally culminated in an offer on the part of Mr. Brennan to the effect that he would transfer and convey to plaintiff an undivided one-half of his two-thirds interest in the estate if plaintiff would not oppose the probate of the will, provided plaintiff would turn over to Mr. Brennan her $500 legacy and pay him $400 for one year's rental of a farm belonging to him in Iowa, the date of rental to commence with March 1, 1932. Plaintiff finally accepted this offer, and on March 7 defendants executed and delivered to plaintiff the following agreement:

"We, Michael W. Brennan and his wife, Elizabeth Brennan hereby agree to sell and deed to Katie Schultz an undivided one-half (1/2) of two-thirds (2/3) of the estate of the late Mary McCarty consisting of cash money, notes and mortgages and any other part of the real and personal property of the estate of the late Mary McCarty for the sum of one dollar ($1.00) and other considerations as soon as the above mentioned properties come into my possession. "Witnessed by

| | |
|---|---|
| "Anna Caley | Michael W. Brennan |
| "Ruth Caley | Elizabeth Brennan" |

The actual consideration for the agreement was not one dollar, but a transfer of plaintiff's cash legacy of $500 to defendant Brennan as well as $400 rent for his farm; also that plaintiff would withhold and refrain from objecting to the will and permit it to go through as written. Defendants in their answer claimed duress and conspiracy as between plaintiff and intervener, but the trial court upon adequate evidence found to the contrary. Plaintiff has duly performed each and every part of the agreement to be by her kept and performed. Defendants have partially performed their agreement in that they have executed and delivered to plaintiff a deed covering an undivided one-third interest in certain lands in North Dakota deeded by Mary McCarty to Mr. Brennan during her lifetime. Mr. Brennan has also entered into some written statement or agreement to the effect that certain described notes are held by him for collection and that plaintiff was to have one-third interest therein. In addition thereto he has paid over and delivered to plaintiff and intervener, out of collections made and other sources of income and assets belonging to Mary McCarty's estate, something over $4,500 to each. But he has refused to convey to plaintiff her share of certain lots in the city of Minneapolis upon which are located two apartment buildings of considerable worth.

It further appears that on March 7, 1932, plaintiff and intervener entered into an agreement with Mr. Brennan that he should receive a certain portion of the net income of their interest in the apartment buildings for looking after and managing the same. He was also privileged to occupy one of the apartments. This agreement was by its terms to expire December 31, 1932. But Mr. Brennan continued to manage the buildings and to occupy the apartment thereafter, refusing to account to plaintiff or to intervener for their interests, likewise refusing to pay for or to charge himself with the value of the use of the apartment retained by him. It also appears that he has in his possession certain notes and securities, part of the estate of Mary McCarty, partly collected and partly in process of collection, as to which he has refused to make accounting. He has excluded both plaintiff and intervener from possession of the apartment buildings and as to plaintiff denies that she has any

right, title, or interest therein. At plaintiff's suit for specific performance against Mr. Brennan and wife, the court found substantially as hereinbefore related, but with much greater particularity, and appointed a receiver to take charge of the remaining property with authority to proceed as a statutory receiver. Defendants moved for amended findings or new trial. The motion being denied, this appeal followed.

1. Defendants attack paragraph four of the findings, wherein the trial court found that plaintiff believed in good faith that the will of Mary McCarty was procured to be made through undue influence by the defendant Michael W. Brennan; that at the time of entering into the agreement (exhibit A hereinbefore quoted) she had reasonable grounds for believing and did believe the will had been so procured. It is strenuously claimed that these findings are without support. Defendants cite 2 Dunnell, Minn. Dig. (2 ed. & Supps. 1932, 1934) § 1760, as follows:

"* * * An agreement not to contest a will held not a valid consideration for a note, there being no reasonable basis for the contest and the threat of contest not being made in good faith."

There can be no quarrel with that statement. No one contends otherwise. But it was for the trier of fact, upon all the evidence and inferences to be drawn therefrom, to determine the truth or falsity of these issues. A careful review of the evidence leads us to the view that the record sustains the findings of the trial court. Mr. Brennan's testimony was badly shaken on cross-examination. There are many inconsistencies and contradictions. The evidence leaves no doubt that plaintiff was very determined in her belief that the will had been procured by unfair means. She so stated at the very outset when informed of what the will contained. The only difficulty presented is whether plaintiff's belief was founded upon reasonable grounds. In support of the court's finding in this behalf it may be noted that testatrix was getting well along in years (past 73 years); that she was and had been in poor health; that Mr. Brennan was her confidential agent and business adviser. He came from his home in Iowa to Minneapolis to visit his sister fre-

quently and on the occasion of the making of the will made a trip from his home to Minneapolis and accompanied her to and from the attorney's office when the will was drawn. To use his own words, pleaded in his answer, he was and for many years had been "a beloved and favorite brother" of testatrix. Plaintiff in her conversation with him immediately after Mary's death accused him of having used undue influence to get title to 2,500 acres of land in North Dakota and Canada, all free of encumbrances, without consideration. There is no doubt about these transfers. In their counterclaim defendants value the one-third interest in the North Dakota land at $5,994.60, and they seek to charge plaintiff in that sum for the deed they subsequently gave her in part performance of the agreement now sought to be specifically enforced. Mr. Brennan's anxiety that plaintiff refrain from consulting an attorney when she threatened contest of the will is rather a strong circumstance that he was conscious of trouble ahead. He made various suggestions of settlement with plaintiff. They negotiated over a period of nearly two weeks before a settlement was reached. The record establishes beyond question that he is a man who can take good care of his own interests and is not easily swayed. He has a mind of his own; and when these negotiations were pending he tried to persuade plaintiff not to worry, saying: "I will take care of you, I will do something for you * * * We will get this fixed up." He made several propositions of adjustment, one of them that he would give her 80 acres of land in Iowa (adjoining plaintiff's farm and for which he exacted $400 from her for a year's use) and cancel some notes he held against her if she would not molest the will but would permit it to be probated. Plaintiff insisted that she knew she could break the will. When the final agreement (exhibit A) was to be drawn, intervener suggested that a lawyer be procured to prepare such instrument, but Mrs. Brennan dissuaded her and urged her not to do so; that Mr. Brennan could and would prepare the necessary papers; and he did so, dictating same as to form and contents. It was run off on the typewriter by a niece, the daughter of intervener. Obviously Mr. Brennan was fearful of the result in the event a contest was started. He had a large interest at stake. We were

informed by counsel at the time of oral argument that if plaintiff is to prevail it means that she will get something like $20,000 out of Mr. Brennan's "share" under the will. If the will were set aside he stood to lose a very considerable part because in that event it is obvious that instead of dividing the property equally among plaintiff, intervener, and Mr. Brennan in the ratio of one-third to each, he would take only one-fifth. As a man of business sagacity, skill, and experience, he undoubtedly could, and did, foresee what was to his own best interest and advantage.

His conduct subsequent to the making of the agreement, extending over a long period of time, indicates rather convincingly that he was of opinion that the contract was valid and binding. We thus find that from March 29, 1932, to February 2, 1933, he made at least five payments to plaintiff on account of her share in the estate, these payments aggregating more than $4,500. Not only that, but he also conveyed to her in fee an undivided one-third interest in the North Dakota lands and instructed her to have the deeds recorded. This conduct on Mr. Brennan's part negates the idea of duress claimed by defendants to have been practiced by plaintiff and intervener and asserted here as ground for reversal. If further reason or ground is desired, defendants' answer furnishes such. Therein they deny "that the plaintiff threatened to contest the probate of said will or that the plaintiff agreed not to contest said will," and further "that no such an agreement was made or furnished any consideration or inducement for" entering into the contract upon which plaintiff's cause rests. We have not recited all of the details bearing upon this phase, but what has been stated leaves no doubt in our minds that the trial court was justified in finding as it did.

2. Lack of consideration or inadequacy thereof as a basis for the validity of the agreement here involved is also asserted as a ground for reversal. To sustain that claim the case of Montgomery v. Grenier, 117 Minn. 416, 136 N. W. 9, is cited. That case was not decided upon the issue of undue influence, but it is of value here in that it affords a yardstick with which to measure whether, upon the facts in the instant case, there is a legal and valid considera-

tion for defendants' promise to perform the contract. The court said (117 Minn. 419):

"To sustain a compromise and settlement it must appear that the claim or controversy settled, though perhaps not in fact valid in law, was presented and demanded in good faith and upon reasonable grounds for inducing the belief that it was enforceable." A promise to refrain from attempting to enforce a claim by legal proceedings forms the basis for a settlement, and "must have some plausible or reasonable ground for its support—facts sufficient to justify a good faith belief in the merits of the claim or demand." (Citing many cases.)

While the basis for plaintiff's claim in respect of undue influence practiced by her brother is far from conclusive, we cannot say as a matter of law that she did not in good faith entertain that view and that the same was founded upon reasonable grounds "inducing the belief that it was enforceable." Be that as it may, the further fact remains that plaintiff surrendered her right to a legacy of $500, parted with $400 for a year's use of defendant's Iowa farm, and gave up the idea of seeking aid of counsel in a matter of vital importance and concern to her. Under these circumstances we cannot say as a matter of law that the agreement is so lacking in consideration as to deprive plaintiff of her contract rights. This court "will not set aside the findings of the trial court or jury as to undue influence unless they are manifestly and palpably contrary to the evidence. It will not do so merely because it would have found differently had the question been submitted to it originally." Dunnell, Minn. Prob. Law, § 174.

3. Defendants next assert that plaintiff promised to make a will or execute some other instrument that upon her death all the remaining property coming to her under her arrangement with defendants would go back to them or their heirs. The court found against defendants' contention in that respect. That finding is challenged as lacking in support. We have carefully examined the record in respect thereof and find that the trial court was not only justified but we think was compelled to make such finding.

4. It is next asserted that the court was wrong in finding that the defendant Brennan was not a suitable person to manage the property. It is argued that he is thoroughly competent and capable, that he has had this matter in hand, knows all of the details, and as such can handle the property to better advantage than can an outsider. Granting for the sake of argument that this is so, it does not follow that he is a "suitable" person to have charge of the property in view of his conduct hereinbefore referred to. It must be borne in mind that this controversy has arisen because Mr. Brennan has assumed a position of hostility to the rights of plaintiff and to intervener. The court upon adequate evidence found that he had failed to account for various items of property that really belonged to the estate. In one instance, and we think this is a fair example of his attitude, he sought to release himself from a $3,500 liability upon a note executed by one Budden and himself to testatrix. He accounted for half of the note and attempted to renew the balance in a new note which was executed by Budden only. This note matured September 10, 1933. Obviously he is not a proper person to collect from himself, especially in view of the fact that he has attempted, although perhaps unsuccessfully, to release himself from liability.

5. Defendants complain that the court appointed a receiver and assert that this is not justifiable. There can be no doubt that where properties are owned in common and the owners thereof are in a snarl, such as we have here, the district court has jurisdiction and authority to appoint a receiver. Schmitt v. Cassilius, 31 Minn. 7, 16 N. W. 453; Green v. National A. & A. Co. 137 Minn. 65, 162 N. W. 1056, L. R. A. 1917E, 784. The matter is one peculiarly within the discretion of the trial court. Ordinarily such act will not be reversed. In the instant case we are satisfied that there was no abuse of discretion.

6. Complaint is made that the court decreed specific performance. Perhaps this matter could be disposed of by calling defendants' attention to the fact that this point is not raised by any assignment of error. But, passing that, we think the law is clear that a party to a contract cannot resist specific performance or

"question adequacy of consideration where, with full knowledge of the facts, he has elected to abide by the contract, declared himself satisfied, or accepted and retained the agreed consideration or the benefits of the contract." 58 C. J. p. 950 [§ 123]. "To justify refusing specific performance on this ground [unfairness] where there is no mistake and the contract was deliberately entered into, it must appear that the defendant has been misled and overreached to such an extent that the contract is unconscionable." Ross v. Carroll, 156 Minn. 132, 135, 194 N. W. 315; Twin City B. & L. Assn. v. Johnson, 194 Minn. 1, 259 N. W. 551.

The other assignments of error have been considered and found wanting in merit.

Affirmed.

[1]Reported in 262 N. W. 874.