IN THE MATTER OF THE WILL OF MARY T. PENDERGRASS, DECEASED.

(Filed 29 January, 1960.)

**1. Executors and Administrators § 31: Wills § 15—**

It is the public policy of this State that wills should be probated, but this rule does not preclude the beneficiaries of an estate from agreeing among themselves to a disposition of the property different from that directed in the will, and they may enter into a consent judgment embodying their agreement even prior to the death of testator which will estop them from claiming under the will, such agreement not being contrary to public policy but being a family settlement favored by the law, which will be upheld when the rights of creditors are not impaired and when fairly made by all the interested parties.

**2. Judgments § 25—**

A consent judgment is a contract of the parties entered upon the records with the approval and sanction of a court of competent jurisdiction, and a consent judgment is binding and may not be set aside without the consent of all the parties thereto except for fraud or mistake in an independent action.

**3. Equity § 1—**

Equity regards the substance and not the form, and is not bound by the names parties give their transactions.

**3. Executors and Administrators § 31: Wills § 15— Consent judgment held in effect a family settlement precluding distribution of property under terms of the will.**

In a proceeding to set aside a deed from mother to son and a contract between them for the support and maintenance of the mother, a consent judgment was entered which stipulated that the deed and contract should

be set aside for mental incapacity, that any will of the mother should not be offered for probate, that if any will executed by her should be offered for probate the judgment should be *res judicata* as to the mental incapacity of the mother, that no demand of accounting should be made against the son in possession of the land, etc. *Held*: The consent judgment constitutes a family settlement supported by sufficient consideration, and while a paper writing executed by the mother was properly offered for probate, the consent judgment constitutes an estoppel, and upon the death of the mother her property must be divided equally among her children in accordance with the purport of the family agreement.

**4. Wills § 46:—Executors and Administrators § 31—**

A devisee or legatee may renounce his right under a will, and thus a beneficiary may enter into an agreement in writing with the remaining beneficiaries for the distribution of an estate in a manner different from that provided in the will.

**5. Executors and Administrators § 31—**

The mutual promises of the parties to a family settlement made for the sake of family harmony, the settlement of controversies and the avoidance of further litigation, constitutes sufficient consideration to support the agreement.

**6. Wills § 17½—**

All matters pertaining to the probate of a will in solemn form and to the distribution of the decedent's estate are matters for the probate court, and it is proper to plead in such proceedings a consent judgment constituting a family settlement.

**7. Insane Persons § 3—**

Notwithstanding that an adjudication of incompetency raises only a rebuttable presumption of mental incapacity and does not ordinarily constitute *res judicata* of the matter, such adjudication, in proper instances, may operate as an estoppel.

**8. Appeal and Error § 56—**

Where, upon the uncontroverted facts, appellant is not entitled to the relief sought by him, the judgment of the lower court reaching the correct result will not be disturbed for mere technicalities of procedure.

PARKER AND HIGGINS, J.J., took no part in the consideration or decision of this case.

APPEAL by propounders from *Nimocks, E. J.,* March, 1959 Civil Term, of WARREN.

A paper writing, dated 28 May 1948, purporting to be the last will and testament of Mary T. Pendergrass was probated in common form in Warren County on 20 May 1957. It purports to make bequests of $1.00 each to testatrix's daughters, Addie Hicks, Bessie Robertson, Sallie Elmore and Minnie Peoples, and testatrix's sons,

E. J. Pendergrass and W. H. Pendergrass, and a bequest of $1000.00 to her daughter, Mary Kitrell, and to will the residue of testatrix's estate to her daughter-in-law, Sally Read Pendergrass, wife of W. H. Pendergrass.

The five daughters and two sons named in the paper writing were all of the children of Mary T. Pendergrass.

On 29 August 1957 all of the children, except W. H. Pendergrass and Addie Hicks, filed caveat. Addie Hicks had died and her sons, W. T. Hicks and Hugh D. Hicks, joined in the caveat. W. H. Pendergrass and wife, Sallie Read Pendergrass, are propounders. The estate consists of land and money.

The caveat alleges that testatrix had insufficient mental capacity to make a will, the execution of the paper writing was procured by undue influence and duress, and W. H. Pendergrass and wife, Sally Read Pendergrass, propounders, are estopped to attempt to probate the will in solemn form and to deny the incompetency of testatrix by reason of a consent judgment entered at the October Term 1948, Superior Court of Vance County (further reference to this judgment hereinafter).

At the trial of caveat proceedings propounders offered the testimony of the two witnesses to the purported will. This evidence tended to show formal execution according to statutory requirements.

Caveators offered in evidence the summons, complaint, answer and judgment (referred to in caveat) in the action entitled "George W. Elmore and E. J. Pendergrass, next friends of Mary T. Pendergrass, vs. W. H. Pendergrass." This action had been instituted to set aside a conveyance of land from Mary T. Pendergrass to W. H. Pendergrass and a contract between the same parties for support and maintenance of Mary T. Pendergrass by W. H. Pendergrass, both instruments dated 23 January 1948. The complaint alleged that Mary T. Pendergrass lacked mental capacity to execute a deed or make a contract.

(The purported will was executed during the pendency of this action, 28 May 1948.)

This action was tried at the October 1948 term of Vance County, *Judge R. Hunt Parker* (now *Justice Parker* of this Court), presiding. The judgment recites findings of fact in substance as follows (numbering ours):

(1) Four physicians and eight lay witnesses testified that Mary T. Pendergrass was mentally incompetent on 23 January 1948 to execute a deed or make a contract; W. H. Pendergrass testified in his own behalf.

(2) After the testimony was in the parties announced to the court that they "had entered into an agreement for settlement of this controversy subject to the approval of the Court."

(3) All parties requested that three issues be submitted to the jury and, by consent, be answered so that the verdict would declare: (a) the mental incompetency of Mary T. Pendergrass; (b) her mental incompetency was known to W. H. Pendergrass at the time of the purported execution of the instruments in controversy; and (c) the consideration for the conveyance was inadequate. The issues were accordingly submitted to and answered by the jury as agreed.

(4) The parties further agreed: The deed and contract be adjudged null and void; the clerk of the court appoint a guardian for Mary T. Pendergrass to administer her funds then on deposit with the clerk; all the children of Mary T. Pendergrass and their spouses — all being of age — sign and consent to all the terms of this judgment and be bound thereby as fully as if parties to the action; all said parties, including Mary T. Pendergrass, be forever barred and estopped from suing for or otherwise demanding an accounting of W. H. Pendergrass and E. J. Pendergrass with respect to any and all transactions they had had with Mary T. Pendergrass, not the subject of the controversy in this action; W. H. Pendergrass not be repaid the cash consideration recited in the deed; it is "AGREED between the parties that Mary T. Pendergrass is an incompetent, and that any Will or Wills which she has made in the past shall not be offered for probate by any of the children or relatives of Mary T. Pendergrass, and that if any Will is offered for probate that the same may be caveated and that this judgment will be *res adjudicata* of the mental incapacity of Mary T. Pendergrass to execute any purported Last Will and Testament"; no charge for rent be made against W. H. Pendergrass for 1948 and prior years; all the children be allowed to see and visit their mother wherever she may be living.

(5) The "agreements herein contained are fair, reasonable, proper and just to Mary T. Pendergrass, incompetent."

It was adjudged (paraphrased in part):

(a) The agreements are ratified and confirmed "as fully as if reiterated herein"; the deed and contract are declared null and void; the clerk is ordered to appoint guardian for the incompetent.

(b) The "agreement heretofore set out in the judgment be and the same are binding as fully as if reiterated on the parties to this action and upon the children of Mary T. Pendergrass consenting thereto as fully as if they were parties to this action, and shall be *res judicata* as to them and shall operate as an estoppel in any

controversy that may arise with reference to the matters heretofore set out in the settlement of this action."

(c) "It is the purpose and intent of this judgment to settle all matters in controversy, or that might be in controversy, between the children of Mary T. Pendergrass, and to prevent any controversy between them in the future; and to effectuate fully that intent and purpose the children of Mrs. Mary T. Pendergrass, who are all over the age of twenty-one years, and their husbands and wives have signed by consent this judgment, and agree and consent to be bound forever by its terms, so that it shall forever bar and estop them from any possible controversy in the past or in the future in any proceeding or any action at law or suit in equity concerning all the matters and things consented to in this judgment; and they consent and agree that they shall be as fully bound by its terms as if they were parties hereto, and agree that this judgment shall operate to estop them as if they were parties hereto; the intent and purpose being to have a full and complete settlement of all things and matters covered in this judgment in order that now and hereafter there may be peace and harmony among the children of Mary T. Pendergrass; and as evidence of their full knowledge of the contents of this judgment and their consent thereto they have signed their names to this judgment in the presence of the Clerk of the Superior Court of Vance County."

*Judge Parker* signed the judgment and following the words, "We consent," all attorneys of record and all the children of Mary T. Pendergrass and their spouses, including W. H. Pendergrass and Sally Read Pendergrass, signed their names to the judgment in the presence of the clerk, who also signed as "witness."

Upon the admission in evidence of the judgment roll in the case of "George W. Elmore and E. J. Pendergrass, next friends of Mary T. Pendergrass, vs. W. H. Pendergrass," *Judge Nimocks* submitted the issue of *devisavit vel non* and peremptorily instructed the jury to answer it "no." The jury responded in accordance with the instruction.

From judgment declaring the paper writing not to be the last will and testament of Mary T. Pendergrass, propounders appealed and assigned errors.

*Banzet & Banzet for propounders, appellants.*

*A. A. Bunn, Gholson & Gholson, John Kerr, Jr., William W. Taylor, Jr., and Charles T. Johnson, Jr., for Caveators, appellees.*

MOORE, J. Propounders insist a new trial should be granted and assign three reasons therefor: (1) That the court erred in admitting in evidence the consent judgment of 1948 and ruling, in effect, that propounders were estopped thereby to probate the will of Mary T. Pendergrass, for that "a contract, cast in the form of a consent judgment, among children of a living mother to nullify her will is contrary to the public policy of the State" and void, and, if otherwise valid, is void as to Sally Read Pendergrass for want of consideration; (2) that there was error in the holding that propounders were concluded on the issue of mental capacity by the consent judgment, in that an adjudication of incompetency is only evidence of mental incapacity in another and different action; and (3) that in its charge to the jury the court erroneously directed a verdict in favor of caveators who had the burden of proof on the issue of mental capacity and undue influence.

It is against the public policy of North Carolina to *fraudulently* suppress, withhold, conceal or destroy a will. The destruction or concealment of a will, for a fraudulent purpose, has by statute been made a misdemeanor. G.S. 14-77. If an executor fails to apply for probate of a will, any devisee, legatee or other interested party may make application after a limited time. G.S. 31-13. Every clerk of the court has authority to compel the production of a will withheld or concealed. G.S. 31-15. ". . . (I)t is the policy of the law that wills should be probated, and that the rights of the parties in cases of dispute should be openly arrived at according to the orderly process of law." *Wells v. Odum,* 207 N.C. 226, 228, 176 S.E. 563.

"It is a settled principle of law in this State that a consent judgment is the contract of the parties entered upon the records with the approval and sanction of a court of competent juridiction, and that such contracts cannot be nullified or set aside without the consent of the parties thereto, except for fraud or mistake, and that in order to vacate such judgment an independent action must be instituted." *Spruill v. Nixon,* 238 N.C. 523, 526, 78 S.E. 2d 323. If not against public policy, the consent judgment admitted in evidence in the case at bar is a valid and subsisting contract and binding upon the propounders and caveators as well.

It is our opinion, and we so hold, that the consent judgment was a family settlement. "Family settlements, . . . when fairly made, and when they do not prejudice the rights of creditors, are favorites of the law. . . . They are made in recognition of facts and circumstances known, often, only to those who have lived in the sacred

family circle, and which a just family pride.would not expose to those who neither understand nor appreciate them. They proceed from a desire on the part of all who participate in them to adjust property rights, not upon strict legal priciples, however just, but upon such terms as will prevent possible family dissensions, and will tend to strengthen the ties of family affection. The law ought to, and does respect such settlements; it does not require that they shall be made in accord with strict rules of law; nor will they be set aside because of objections based upon mere technicalities." *Tise v. Hicks*, 191 N.C. 609, 613, 132 S.E. 560. Our Superior Courts will exercise their equity jurisdiction to affirm and approve family agreements when fairly and openly made. *Reynolds v. Reynolds*, 208 N.C. 578, 622, 182 S.E. 341. Our Court is in accord with the holdings in other jurisdictions. Family settlements are almost universally approved. Annotation, 97 A.L.R., Will, Agreement among beneficiaries, section II, pp. 469-70. Wisconsin seems to be the only jurisdiction that holds a directly contrary view. *Graef v. Kanouse* (Wis. 1931), 238 N.W. 377.

Equity regards substance, not form, and is not bound by names parties give their transactions. *Schumaker v. Bank* (CC4C 1931) 52 F. 2d 925. W. H. Pendergrass in open court solemnly agreed that the jury should find that his mother was mentally incompetent (a fact to which four physicians and eight lay witnesses attested), that he knew she was incompetent when he made the contract with her and procured from her a conveyance of her land, and that the consideration given her by him was inadequate. In substance this was an admission of fraud. There are reasonable inferences which may be drawn from the record, that he and his wife had closed their doors to other members of the family and would not permit the other children to see their mother, and that he knew that the purported will had been executed pending the trial of the cause in which the consent judgment was entered. By the terms of the consent judgment he was released from any accounting of his transactions with his mother and from payment of rent. He and his wife, together with all the other children of Mary T. Pendergrass and their spouses, consented and agreed in writing, with the approval of the court, "that any will or wills which she (Mary T. Pendergrass) has made in the past shall not be offered for probate" and if offered for probate shall be "caveated and this judgment will be *res adjudicata* of the mental incapacity of Mary T. Pendergrass," that they shall be fully bound by the judgment and it shall "operate as an estoppel." The agreement recites it was to settle all matters in controversy between the chil-

dren and prevent any future controversy, that there might be peace and harmony among them. Yet, W. H. Pendergrass and wife, Sally Read Pendergrass, seek to probate the will and take the property in contravention of their solemn engagement.

The sense and intent of the agreement is that the children and their spouses put an end to controversy, avoid further litigation, live in peace, harmony, mutual respect and natural affection as befits a family, and upon death of the mother share equally in her estate, if any she has.

In North Carolina a devisee or legatee may disclaim or renounce his right under a will. *Perkins v. Isley*, 224 N.C. 793, 797, 32 S.E. 2d 588. An agreement in writing between the widow and heirs of a decedent to share in and distribute his estate in a different manner from that provided in his will has been upheld. *Kirkman v. Hodgin*, 151 N.C. 588, 66 S.E. 616. Our Court declines to " 'make a will' for the decedent, agreeable to the desire of the parties interested; *In re Will of Westfeldt*, 188 N.C. 702, 125 S.E. 531; unless the doctrine of family settlement applies, when the jurisdiction is somewhat extended . . ." *Bailey v. McLain*, 215 N.C. 150, 155, 1 S.E. 2d 372. Caveators may be estopped by their conduct from attacking the validity of a will. *In re Will of Averett*, 206 N.C. 234, 173 S.E. 621.

Family settlements for distribution of estates contrary to testamentary dispositions are almost universally approved, upheld and enforced, where the rights of creditors are not impaired and in the absence of fraud. Annotation, 38 A.L.R., Family Settlement, section II, pp. 735-6; 57 Am. Jur., Wills, sec. 1005, p. 653. But such agreements are uniformly declared invalid unless all who receive an interest under the will join in the agreement. *Greene v. King*, (Conn. 1926), 132 A. 411; *Hunter v. Jordan* (Wash. 1930), 291 P. 47. Family agreements for settlement of estates contrary to the provisions of wills have been upheld even when made before the death of the testator. Annotations, 38 A.L.R., Family Settlements, sec. IV, pp. 753-4, and 118 A.L.R., Family Settlement, Sec. IV, pp. 1362-3.

"Moreover, according to the great weight of authority, in the absence of fraud, a contract to dispose of the property in a testate estate in a manner different from the will is valid, even though it contemplates the rejection of the will when offered for probate or its setting aside when admitted to probate. . . . The foregoing views are based upon the theory that while a testator has a right to dispose of his property by will and may make such disposition as may suit his purpose so long as it is not prohibited by law, the persons in-

terested in his estate either as beneficiaries under the will or by intestate succession have an equal right to renounce the will by agreement. Most authorities hold that an agreement to disregard the provisions of a will and not to probate it, or, if it has already been probated, to set the probate aside, is not invalid as contrary to public policy, or as in violation of a statute penalizing the fraudulent destruction of a will, and that such an agreement will be enforced except as to persons in interest under the will who are not parties thereto." 57 Am. Jur., Wills, Sec. 1013, p. 657. See also Annotation, 117 A.L.R., Suppression of Will, sec. II, pp. 1250-1-2; *Brakefield v. Baldwin* (Ky. 1933), 60 S.W. 2d 376.

In the instant case, we hold that the consent judgment is not *contra bonos mores* and is valid. All persons named as beneficiaries in the purported will are parties to the consent judgment. Rights of creditors are unimpaired. It was openly and fairly made and no taint of fraud is apparent. There is ample consideration to support the agreement. The mutual promises for the sake of family harmony and good will, the settlement of controversies and the purpose to avoid further litigation outweigh mere pecuniary considerations. *Tise v. Hicks, supra;* Annotation, 97 A.L.R., Will, Agreement among beneficiaries, sec V, pp. 471-2.

It was proper to plead the consent judgment in the caveat proceedings. "The modern tendency is to extend the jurisdiction of the probate court in respect to matters incidental and collateral to the exercise of its recognized powers." *In re Noble* (Kan. 1935), 41 P. 2d 1021, 97 A.L.R. 463. All matters pertaining to the probate of the will in solemn form and to the distribution of decedent's estate are matters for the probate court. We do not intimate that propounders should not have exhibited the paper writing to the clerk of superior court. In all cases it is the best practice to deliver purported wills to the probate court along with all other related documents that proper orders or disposition may be made with respect thereto.

Ordinarily an adjudication of incompetency is not *res judicata* of the mental condition of the subject of the inquiry, especially as to those not parties or privies to the hearing, and only raises a rebuttable presumption of mental incapacity. *Medical College v. Maynard,* 236 N.C. 506, 509, 73 S.E. 2d 315. But in this case the consent judgment may not be limited to its evidentiary value with respect to the mental condition of the testator. It estops all parties thereto from insisting on the probate of the will or, at least, from taking any benefits thereunder.

Whether the court was correct in giving a peremptory instruction affecting the validity of the will is unimportant in this case. At least the paper writing is an empty shell so far as the contracting parties are concerned; and all the devisees and legatees therein are parties to the contract. The Court will not permit the propounders to circumvent and ignore their solemn agreement. Equity will not allow technicalities of procedure to defeat that which is eminently right and just. We have repeatedly held that "if the correct result has been reached, the judgment should not be disturbed even though the court may not have assigned the correct reasons for the judgment entered." *Sanitary District v. Lenoir*, 249 N.C. 96, 99, 105 S.E. 2d 411.

No error.

PARKER and HIGGINS, JJ., took no part in the consideration or decision of this case.