VERNON M. HOLT v. VERDIE R. HOLT AND WILLIAM S. HOLT

No. 113

(Filed 6 October 1981)

1. **Executors and Administrators § 33.1— family settlement agreement—sufficiency of consideration**

    In order for a promise not to contest a will to constitute consideration to support a family settlement agreement modifying a will, there must be a *bona*

*fide* dispute as to the validity of the will in question. Therefore, plaintiff's relinquishment of his right to caveat a codicil to his mother's will, in which codicil he was left nothing, was insufficient consideration, in the absence of a *bona fide* dispute as to the codicil's validity. The mere quieting of a family dispute over the provisions of a will is insufficient consideration for an agreement modifying the will.

**2. Executors and Administrators § 33.1— summary judgment motion—failure to rebut showing of no bona fide dispute**

Where all the evidence forecast at a summary judgment hearing was that a codicil excluding plaintiff from sharing in his mother's estate was duly executed and the deceased had testamentary capacity when she executed it, and the only evidence to the contrary was plaintiff's bare allegations that if the codicil were probated he would contest it, plaintiff failed to rebut defendants' showing that there was no *bona fide* dispute as to the codicil's validity, and summary judgment was properly entered for defendants.

ON discretionary review[1] of a decision of the Court of Appeals[2] reversing *Judge William Wood's* order at the 26 October 1979 Civil Session of STANLY Superior Court granting defendants' and denying plaintiff's motion for summary judgment.

*Lefler and Bahner, by John M. Bahner, Jr., and James E. Griffin, Attorneys for plaintiff appellee.*

*Brown, Brown and Brown, by Richard Lane Brown, III, and Steven F. Blalock, Attorneys for defendant appellants.*

EXUM, Justice.

Plaintiff's complaint alleges that defendants, his brothers, breached a family settlement agreement. Defendants moved for and were granted summary judgment. The Court of Appeals reversed and remanded. We consider first whether plaintiff's relinquishment of his right to caveat a codicil to his mother's will in which codicil he was left nothing may, in the absence of a *bona fide* dispute as to the codicil's validity, constitute consideration for defendants' promise to distribute a portion of their property given under the codicil to plaintiff. We hold that it may not. Accordingly, since plaintiff here has presented no forecast of evidence indicating that at trial he would be able to show that a *bona fide* dispute existed as to the validity of the codicil in ques-

---

1. Allowed 7 October 1980.

2. Reported at 47 N.C. App. 618, 267 S.E. 2d 711 (1980).

tion defendants' motion for summary judgment was properly granted.

Affidavits submitted in support of both plaintiff's and defendants' motions for summary judgment reveal the following facts: By will dated 29 October 1964 Annie Holt provided that "all of my property of every sort, kind and description . . . [shall go] to my three sons, namely, Verdie R. Holt, Vernon M. Holt and William S. Holt, share and share alike, absolutely and in fee simple." On 11 September 1969, however, she executed a codicil wherein she provided that all of her property was to go "to two of my sons, Verdie R. Holt and William S. Holt, share and share alike, absolutely and in fee simple. I am not willing my son Vernon M. Holt anything . . . because he has not treated me as a child should treat his mother." Annie Holt died on 25 March 1977.

Shortly thereafter Verdie and William Holt, accompanied by their wives, and Vernon Holt, accompanied by his daughter, met in the office of S. Craig Hopkins, an attorney in Albemarle, North Carolina. Hopkins read the will and codicil. He also read a note, found with the codicil and purportedly in the deceased's handwriting, which further explained why Vernon was not to share in her estate. A bitter dispute between the brothers followed. Hopkins' affidavit reveals that "[a]fter the codicil to the Will and the note . . . were read by me, Mr. Vernon Holt and his daughter became quite upset and contended that his mother did not write this note and that it was not in her handwriting, and that Mrs. Holt wanted the three sons to share and share alike in her property. There ensued quite a heated discussion between Mr. Vernon M. Holt and his daughter and Verdie and William Holt in connection with the wishes of their mother. Mr. Vernon Holt's daughter began to use very vile language and calling [sic] Verdie and William and members of their family profane names. The language was so vile and intemperate that it became very embarrassing to me." Similarly, affidavits of both Verdie and William Holt indicate that "Vernon M. Holt and his daughter . . . became enraged upon the reading of the . . . Codicil and thereupon incited a violent argument; that [Vernon Holt's daughter] began using extremely vile language . . . . [A]t one point in the argument, Vernon M. Holt . . . threatened to commence a lawsuit . . . in order to inundate us with attorney's fees unless we conveyed a share of the

estate assets to him. . . . [W]e refused to do so and made known our intention not to succumb to such threats."

Mr. Hopkins attempted to resolve the conflict by explaining that if they so desired the three brothers could divide the property equally by probating the will and not probating the codicil. After Vernon Holt "agreed to be a brother to all of them and that they would be a family together again" an agreement was reached to probate the will and not probate the codicil. The codicil was then torn into several pieces and on 28 March 1977 the will was probated.

Beyond this, however, the nature of the agreement reached is disputed. Verdie and William Holt contend that while they agreed to probate the will alone, it was further understood that William would receive the largest share of the property and that this would be accomplished by executing reciprocal deeds drawn accordingly. Vernon Holt contends the agreement contemplated only that he "would share equally in my mother's estate and that the will . . . would constitute the Last Will and Testament of Annie H. Holt."

Consequently Vernon Holt refused to execute a deed drawn at his brothers' direction which in his opinion did not equally divide the property. Upon his failure to execute the deed Verdie and William Holt reconstituted the codicil and offered it for probate. The codicil was probated on 4 August 1977.

Vernon Holt filed complaint on 26 March 1978 requesting the trial court to "specifically enforce the family settlement agreement . . . and award to the plaintiff a one-third interest in all land Annie H. Holt died seized of and the sum of $3,232.95 which represents one-third of the personal property of Annie H. Holt." Subsequently both plaintiff and defendants moved for summary judgment. Judge William Wood, presiding at the 26 October 1979 Civil Session of Stanly Superior Court, granted defendants' and denied plaintiff's motion.

The Court of Appeals, in an opinion by Judge Webb with Judges Parker and Clark concurring, reversed and remanded the matter to the trial court. That court concluded that the agreement not to probate the codicil was not against public policy. Further, "the family settlement agreement . . . was supported by

sufficient consideration . . . ." Consequently the court held that as to the personal property in the estate plaintiff was entitled to summary judgment. As to the real property, the court held that if plaintiff's version of the oral agreement is correct it was fully executed and thus not subject to the Statute of Frauds; conversely, if defendants' version of the oral agreement is correct it was partially executed and thus subject to and barred by the statute. Accordingly, the Court of Appeals remanded for a jury trial on this issue.

Defendants contend the Court of Appeals erred in reversing summary judgment in their favor. Among other things, they argue that the agreement was not supported by consideration since "there . . . never [was] any question raised as to the authenticity of the codicil or as to the mental competency of the testatrix or as to undue influence on the part of the [defendants]." We agree with this contention. The Court of Appeals erred in concluding to the contrary. Since this decision disposes of the case, we neither reach nor determine the correctness of the Court of Appeals' conclusions on the other issues it addressed.

We note at the outset that the essence of the agreement between plaintiff and defendants was to distribute to plaintiff a portion of deceased's property devised to defendants. The parties could, of course, have agreed to do this even if they probated the codicil. Thus their agreement to tear up and not probate the codicil was legally immaterial. Tearing up, or not probating, the codicil was merely the mechanism by which the parties sought to effect their only legally material promises, which were defendants' promise to give to plaintiff certain property devised to them in exchange for plaintiff's promise not to engage the estate in litigation over the codicil's validity. The complaint alleges:

> "That the plaintiff and the defendants, in order to avoid costly litigation, to preserve the estate and to promote and encourage family accord, agreed each with the other that, *in return for Vernon Holt's agreement not to file Caveat to said Codicil,* that said Codicil would not be probated and that the property of Annie H. Holt would descend as provided in said Will." (Emphasis supplied.)

Whether plaintiff's promise to relinquish his right to litigate the codicil's validity constitutes consideration sufficient to render en-

forceable defendants' promise to give plaintiff a portion of the property devised to them is the question before us. To resolve it we must examine both the law applicable to family settlement agreements and to summary judgments. We begin with a discussion of the law of family settlement agreements.

I

[1] Family settlement agreements, when fairly made and not prejudicial to creditor's rights, are favorites of the law. *In re Will of Pendergrass*, 251 N.C. 737, 112 S.E. 2d 562 (1960); *Bohannon v. Trotman*, 214 N.C. 706, 200 S.E. 852 (1939); *Tise v. Hicks*, 191 N.C. 609, 132 S.E. 560 (1926). Being a species of contract, they must be supported by consideration. *Sternberger Foundation, Inc. v. Tannenbaum*, 273 N.C. 658, 161 S.E. 2d 116 (1968); *O'Neil v. O'Neil*, 271 N.C. 106, 155 S.E. 2d 495 (1967). The mere relinquishment of a right to contest a will is not sufficient consideration to support a reciprocal promise to modify the will unless there is a *bona fide* dispute as to the will's validity. In *O'Neil v. O'Neil, supra*, pending trial of issues raised by caveat, a family settlement agreement was entered into providing for modification of the will. In consideration for these modifications the caveators agreed that they would "interpose no objection to the probate of the 'Will' in solemn form." 271 N.C. at 108, 155 S.E. 2d at 497. The trial court approved the family settlement agreement upon finding, among other things, that there was a "bona fide controversy regarding the validity of the paper writing purporting to be the will." 271 N.C. at 110, 155 S.E. 2d at 499. This Court, however, concluding that there was insufficient evidence in the record to support this finding of a *bona fide* controversy, remanded the matter for further proceedings saying, 271 N.C. at 112, 155 S.E. 2d at 500:

"The mere fact that a caveat has been filed, standing alone, is not sufficient ground for modification of the dispositive provisions of the will. The outcome of the litigation must be in doubt to such extent that it is advisable for persons affected to accept the proposed modifications rather than run the risk of the more serious consequences that would result from an adverse verdict.

---

**Holt v. Holt**

---

"Nothing in the record indicates evidence was offered when the case was submitted to Judge McConnell. The judgment seems to be based solely upon admissions and stipulations. Hence, its binding effect, if any, upon defendants, is predicated upon the agreements and consent of their guardian *ad litem*."

Later, after evidence was offered to support the existence of a *bona fide* dispute over the will's validity, this Court affirmed the judgment of the trial court approving the family settlement agreement. *O'Neil v. O'Neil,* 271 N.C. 741, 157 S.E. 2d 544 (1967). This requirement that the outcome of litigation over the will be in doubt, most often expressed in terms of the need for a *bona fide* dispute, permeates our case law on family settlements.[3]

Indeed this point was noted in *Bailey v. Wilson,* 21 N.C. (1 Dev. & Bat. Eq.) 182 (1835), this Court's first family settlement case. *Bailey* involved a father's will in which he made substantial provisions for each of his four sons. Two sons, because their devise of *land* was somewhat less than that devised to their other two brothers, threatened to contest the will. In order to avoid this litigation the four sons entered into a relatively elaborate written agreement by which they effected a more equal distribution of their father's land *and personal property* than he had by will provided. The agreement provided that the two brothers who got more land would give some of it to the other brothers in return for the other brothers giving to them some of their personalty. There was nothing in the case to cast any doubt on the validity of the will. When an action was brought to enforce this agreement, one of the defenses was lack of consideration. Speaking to this defense, the Court said, 21 N.C. at 188-89:

"It is objected that the agreement of compromise was wholly voluntary, and that a court of Equity will not enforce

---

3. In the following cases, for example, a specific finding that the dispute was *bona fide* was made either by the trial court or there was a conclusion to that effect by the appellate court: *Sigmund Sternberger Foundation, Inc. v. Tannenbaum, supra; O'Neil v. O'Neil, supra,* 271 N.C. 741; *Bohannon v. Trotman, supra.* In the relatively few cases affirming a family settlement agreement in the absence of a finding by the trial court as to the existence of a *bona fide* controversy it is usually clear that such a controversy did in fact exist, *see, e.g., In re Will of Pendergrass, supra,* or there was other sufficient consideration to support the agreement, *Bailey v. Wilson,* 21 N.C. (1 Dev. & Bat. Eq.) 182 (1835), discussed, *infra,* in text.

its specific execution. Where there is a fair doubt as to the rights of parties, an agreement entered into without fraud, for the compromise of those rights, is not a voluntary agreement, and is a fit subject for the jurisdiction of a court of Equity. We should, however, have great difficulty in enforcing this agreement merely as a compromise of doubtful rights, for the bill sets forth no rights as claimed by the plaintiffs in opposition to those derived under the will. There is no averment of any matter which should render the validity of the will doubtful, but only of an intention on the part of the dissatisfied brothers to contest its probate. It seems to us that in order to make out a case of a compromise of doubtful rights it was necessary to state what were the alleged rights in regard to which the doubts existed. But it is not exclusively on this ground that the claim of the plaintiffs rests. The agreement was confessedly entered into for the purpose of quieting disputes between the children of the same father, in relation to the disposition of his property; it is apparently equal; it is not denied to be fair; and was deliberately assented to as a proper and just family arrangement. Such arrangements are upheld by considerations, affecting the interests of all the parties, often far more weighty than any considerations simply pecuniary. *Stapilton v. Stapilton,* 1 Atk., 10; *Cary v. Cary,* 1 Ves., 19; *Pullen v. Ready,* 2 Atk., 292." (Emphasis original.)

The language in *Bailey* which seems to say that the mere quieting of the family dispute over the provisions of the will provides sufficient consideration for an agreement modifying the will was quoted in *Tise v. Hicks, supra,* 191 N.C. 609, 613-14, 132 S.E. 560, 562. Similar language was used in *In re Will of Pendergrass, supra,* 251 N.C. 737, 745, 112 S.E. 2d 562, 568. It is clear, however, that in *Tise* there was sufficient other consideration to support the agreement and in *Pendergrass* there was, in fact, a *bona fide* dispute over the will. This language, consequently, must be read in the context of the facts to which it applied. So read, it is clear that the language refers not simply to the quieting of a family dispute over a will but to the provisions of the particular agreement by which two brothers gave personalty bequeathed to them to the two other brothers in return for a greater share in the land. This was the consideration which supported the agreement in *Bailey.*

---

**Holt v. Holt**

---

Whether there is a *bona fide* dispute depends, furthermore, not on what any particular party to the alleged compromise may subjectively believe about it, but whether the *bona fides* of the disagreement may, under all the facts and circumstances of the case, be reasonably found to exist by the trier of fact. This principle inheres in our decisions; and cases from other jurisdictions with near uniformity hold that absent any basis in fact and law upon which to challenge the validity of a will, a compromise promise to distribute the property differently from the manner contemplated by the will is unenforceable due to lack of consideration if the reciprocal promise is merely not to contest the will. As stated by the Supreme Court of Errors of Connecticut (now Supreme Court of Connecticut) in *Warner v. Warner*, 124 Conn. 625, 631-32, 1 A. 2d 911, 914 (1938):

> "*[I]n order to furnish a consideration for a compromise agreement the contest must be instituted or intended in good faith and based upon reasonable grounds for inducing a belief that it is sustainable. 'With no basis in fact for a contest, and no reasonable ground for believing that a contest might rightfully be instituted and maintained, the agreement to refrain from doing so furnishes . . . no sufficient consideration for the promise . . . .'* Montgomery v. Grenier, 117 Minn. 416, 420, 136 N.W. 9, 11; *Hardin's Adm'rs v. Hardin*, 201 Ky. 310, 312, 256 S.W. 417, 38 A.L.R. 756; 12 Am. Jur., Contracts, §§ 85, 86, 87. . . . 'It is well settled that . . . the termination of family controversies affords a consideration which is sufficient to support a contract made for such purposes. . . . In order to render valid the compromise agreement, it is not essential that the matter should be really in doubt; but it is sufficient if the parties consider it so far doubtful as to make it the subject of compromise. . . . But it is necessary, *in order to furnish consideration for such compromise agreement that the contention be made in good faith and be honestly believed in.'* Preston v. Ham, 156 Ga. 223, 234, 119 S.E. 658, 662. The fact that family settlements are favorites of the law does not dispense with the necessity for some consideration to render them valid. *Hardin's Adm'rs v. Hardin*, supra, page 311, 256 S.W. 417." (Emphasis supplied.)

Similarly, as noted by the Supreme Court of Iowa in *Lockie v. Baker*, 206 Iowa 21, 24, 218 N.W. 483, 484 (1928):

*"The quite universal rule is that to sustain a compromise and settlement it must appear that the claim or controversy settled,* though perhaps not in fact valid in law, *was presented and demanded in good faith and upon reasonable grounds* for inducing the belief that it was enforceable." (Emphasis supplied.)

Again, as expressed by the Supreme Court of Illinois in *Anderson v. Anderson,* 380 Ill. 488, 496, 44 N.E. 2d 43, 47 (1942):

"[T]he established rule [is] that . . . contracts [compromising family disputes], as well as all other contracts require as an essential element of their validity a sufficient consideration. The disputes between rival claimants to an estate are fair subjects of compromise and settlement, and the mutual concessions of the parties for the prevention of litigation afford a valid consideration for the agreement. . . . It goes without saying, however, that *there must be some reasonable or substantial basis for the claims advanced by the parties which are surrendered by the agreement."* (Emphasis supplied.)

Other cases holding that for a promise not to contest a will to furnish consideration for a family settlement agreement there must appear from all the facts and circumstances a reasonable basis upon which to challenge the validity of a testamentary instrument include: *Crawford v. Engram,* 157 Ala. 314, 47 So. 712 (1908); *Murphy v. Henry,* 311 Ky. 799, 225 S.W. 2d 662 (1949); *Schultz v. Brennan,* 195 Minn. 301, 262 N.W. 877 (1935); *Stanley v. Sumrall,* 167 Miss. 714, 147 So. 786 (1933); *Bryant v. Bryant,* 295 Pa. 146, 144 A. 904 (1929); *see generally* Annot., 29 A.L.R. 3d 8, "Family Settlement of Testator's Estate," § 27; 80 Am. Jur. 2d Wills §§ 1105-06 (1975); Restatement (Second) of Contracts § 76B (1973).[4]

In summary, in order for a promise not to contest a will to constitute consideration to support a family settlement agreement

---

4. We recognize that certain decisions contain language suggesting that consideration sufficient to support a family settlement agreement is present where the party who threatens to or in fact challenges a testamentary instrument subjectively believes he has a good claim even though he is unable to demonstrate in the facts and circumstances a reasonable basis for this belief. *See, e.g., Mackin v. Dwyer,* 205 Mass. 472, 91 N.E. 893 (1910); *Rutledge v. Hoffman,* 81 Ohio App. 85, 75 N.E. 2d 608 (1947). We expressly reject such an approach.

modifying the will, there must be a *bona fide* dispute as to the validity of the will in question. Further, the *bona fides* of the dispute must be reasonably apparent from all the facts and circumstances surrounding the dispute itself.

II

[2] We next consider the law applicable to summary judgment and the parties' factual showing on their motions.

Summary judgment is a device by which a defending party may present a forecast of evidence tending to show that claimant will be unable at trial to make out a *prima facie* case because he will not be able to offer sufficient evidence of an essential element of his claim. If such a forecast of evidence is presented, the burden is then upon the claimant to come forward with a forecast of evidence demonstrating that he will at trial be able to make out at least a *prima facie* case. *Dickens v. Puryear*, 302 N.C. 437, 453, 276 S.E. 2d 325, 335 (1981); *Moore v. Fieldcrest Mills, Inc.*, 296 N.C. 467, 470, 251 S.E. 2d 419, 421 (1979). The claimant "need not present all the evidence available in his favor but only that necessary to rebut the defendant's showing that an essential element of his claim is non-existent." *Dickens v. Puryear, supra*, 302 N.C. at 453, 276 S.E. 2d at 335.

The record here consists both of the estate docket and the civil docket. The estate docket reveals the following: The deceased executed a codicil excluding plaintiff from sharing in her estate because "he has not treated me as a child should treat his mother." Execution of the codicil was witnessed by Elton Hudson and Sherri McClure. Elton Hudson submitted an affidavit stating that deceased, in his presence, "signed the paper writing . . . and at such time declared the paper writing to be [her] Last Will and Testament; and that then, at the request and in the presence of the deceased, affiant signed the paper writing as an attesting witness. Affiant further says that at the time aforesaid the deceased was of sound mind and disposing memory, of full age to execute a will, and was not under any restraint to the knowledge, information or belief of the affiant." Because Sherri McClure had moved to another county Karen Hudson submitted an affidavit stating that she is acquainted with the handwriting of Sherri McClure and that the signature subscribed to the codicil is that of Ms. McClure. A note, found with the codicil, further explained

why testatrix excluded plaintiff from her estate. The codicil was on 4 August 1977 admitted to probate.

The civil docket contains both plaintiff's and defendants' affidavits. Defendants' affidavits allege, among other things, that when decedent executed the codicil she "possessed the requisite capacity, mental and legal"; that she "knew the nature and extent of her worldly possessions" and the natural objects of her affection; that she had on numerous occasions stated her desire to exclude plaintiff from sharing in her estate; that in deceased's opinion plaintiff had treated her "cruelly and in a manner wholly unlike that in which a mother ought to be treated by her son"; that the note which was found with the codicil was in the decedent's handwriting; that upon the reading of the codicil and note plaintiff and his daughter became enraged; that plaintiff "threatened to commence a lawsuit against [defendants] in order to inundate [them] with attorneys' fees unless [they] conveyed a share of the estate assets to him"; that plaintiff promised "to become a member of the family once again"; that defendants agreed to allow plaintiff to share in decedent's estate, although it was agreed William Holt would receive a larger share; and that "at no point did [plaintiff] . . . assail the authenticity or validity of . . . the . . . Codicil, and that he never sought to file a caveat against the . . . Codicil."

In plaintiff's affidavit, which is his sole evidentiary forecast in the record,[5] he in pertinent part alleges that after the reading of the codicil and note plaintiff "expressed the opinion that the codicil was not the will of [decedent], and that if the purported codicil were probated, I [plaintiff] would contest the same." Further, "that in order to avoid costly litigation, to settle the controversy regarding said codicil and to preserve the estate and family pride and to promote and encourage family accord, I [plaintiff] and . . . Defendants, would share equally in my mother's estate . . . ."

On this state of the record, then, we conclude that defendants have presented a forecast of evidence tending to show that plaintiff at trial will be unable to show any facts or circumstances

---

5. Although plaintiff's daughter submitted an affidavit on his behalf, it is, except for the substitution of names, exactly like that of plaintiff.

from which it could be reasonably determined that a *bona fide* dispute as to the validity of the codicil existed between the parties. Plaintiff has failed to come forward with a forecast of evidence tending to show that he has or will be able to produce evidence of such facts or circumstances at trial. There is, for example, no forecast of evidence that the deceased lacked testamentary capacity or that the codicil was the result of undue influence, fraud or mistake, or that it was not duly executed. All the evidence forecast at the summary judgment hearing is that the codicil was duly executed and the deceased had testamentary capacity when she executed it. There is only plaintiff's bare allegation that if the codicil were probated he would contest it. Plaintiff has, therefore, failed to rebut defendants' showing that there is no *bona fide* dispute as to the codicil's validity. Consequently, plaintiff's threat to and ultimate promise not to engage the estate in litigation over the codicil's validity provides no consideration for defendants' promise to distribute deceased's property differently from the manner provided by the codicil. Defendants' promise is, therefore, unenforceable. Summary judgment for defendants was properly entered by the trial court.

For reasons stated the decision of the Court of Appeals reversing summary judgment in favor of defendants is

Reversed.