VICTOR BERTON WAGNER, JESSE LEE WILSON and CARL WINFRED WILSON, Co-Executors under the will of LOVE HONBAIER, Deceased; JESSE RAY HONBAIER, SR., and Wife, ESTER VERONA HONBAIER; JESSE RAY HONBAIER, JR., and Wife, ELLA LOUISE BURR HONBAIER; SADIE IDA HONBAIER SHEPHERD and Husband, BAXTER CLAY SHEPHERD; KATIE ESTER HONBAIER SHOAF and Husband, WILLIAM CLAY SHOAF; MINNIE FRANCES HONBAIER BURLESON and Husband, U. S. BURLESON, JR.; DORA HONBAIER GREENE and Husband, J. EDWARD GREENE; VIVIAN RAY DEAL BARNETTE and Husband, ANDREW BARNETTE, SR.; IDA RACHEL GREENE TILLEY and Husband, ARTHUR WAYNE TILLEY; MARY EDNA GREENE PHIFER; KATIE LEE GREENE SWARINGEN and Husband, MARSHALL L. SWARINGEN; TOMMIE LEE HONBAIER, SR., and Wife, PANSY HONBAIER; TOMMIE LEE HONBAIER, JR., and Wife, BETTY BELL HONBAIER; KATIE HONBAIER WAGNER and Husband, VICTOR BERTON WAGNER, individually; NANCY LEE WAGNER THOMPSON and Husband, WILLIAM T. THOMPSON; MINNIE HONBAIER WARREN and Husband, C. R. WARREN; ADDIE HONBAIER LYERLY and Husband, GERRY J. LYERLY; CLARA HONBAIER TAYLOR and Husband, JAMES HASKEL TAYLOR, and CARL WINFRED WILSON, individually, and Wife, FRANCES WILSON, v. STEPHEN WAYNE HONBAIER, VERONA KATE SHOAF, WILLIAM CLAY SHOAF, JR., TERRY WAYNE BURLESON, PATSY ANN BURLESON, JACK DONALD BURLESON, JAMES EDWARD LOVE GREENE, ANDREW BARNETTE, JR., CURTIS BARNETTE, SYLVIA BARNETTE, MARY ANNE COVENO, B. R. PHIFER, JR., GREGORY CARLTON HONBAIER, CAROLYN FAY WAGNER JOHNSTON, and VICKI LYNN THOMPSON, all of whom are minors; and JULIAN C. JOHNSTON, Husband of CAROLYN FAY WAGNER JOHNSTON; the unborn issue or the unborn lineal descendants of the blood of JESSE RAY HONBAIER, SR., DORA HONBAIER GREENE, TOMMIE LEE HONBAIER, SR., and KATIE HONBAIER WAGNER; and the unborn issue or the unborn lineal descendants of the blood of MINNIE HONBAIER WARREN; ADDIE HONBAIER LYERLY, CLARA HONBAIER TAYLOR and CARL WINFRED WILSON.

(Filed 21 May, 1958.)

**1. Appeal and Error § 21—**

An exception to the signing of the judgment presents the single question whether the facts found by the court below are sufficient to support the judgment.

**2. Executors and Administrators § 24—**

Family agreements for the settlement of an estate to adjust family differences and controversies are favored by the law and are valid and binding when approved by the court, but nevertheless family agreements will not be allowed to amend or revoke a will solely because of dissatisfaction of the devisees with its provisions.

**3. Same—**

The rule that the law looks with favor upon family agreements does not prevail if the rights of infants are unfavorably affected.

**4. Same— Family agreement for settlement of estate approved in this case.**

Under the will in question the present value of the amount the grandchildren of testator and contingent beneficiaries would ultimately receive, under one construction, was some 22 per cent of the value of the estate. Certain of the children of testator were preparing a caveat, and thereafter a family settlement was agreed to and signed by all the beneficiaries who had reached their majority, under which settlement the grandchildren and contingent beneficiaries would have 5 per cent of the estate set aside in a trust fund for their benefit. *Held:* It appearing that it was extremely doubtful that the will would withstand a caveat based on the ground of mental incapacity of testator at the time of executing the instrument, and that if the will were set aside all the contingent beneficiaries and the grandchildren except one, who had signed the agreement, would receive nothing, the decree approving the family settlement upon appropriate findings and conclusions, is affirmed.

APPEAL by minor defendants by and through their respective guardians *ad litem* from *Olive, J.,* March Term 1958 of ROWAN.

This is an action instituted on 24 February 1958, for the purpose of obtaining the court's approval of a family settlement agreement.

Love Honbaier, a citizen and resident of Rowan County, North Carolina, died on 26 October 1956, leaving a last will and testament dated 23 November 1953. This last will and testament was probated in common form in the office of the Clerk of the Superior Court of Rowan County; the pertinent parts thereof read as follows:

"2nd. My executors are authorized and directed to sell all of the personal property which I am seized and possessed of at the time of my death and collect all money due my estate and divide same, after the provisions mentioned in the foregoing paragraph have been complied with (the payment of debts), equally among my heirs hereinafter named; and in making this bequest I am not unmindful of my beloved wife's rights to dower and a year's allowance as provided by law. (The wife of the testator died 14 November 1957.)

"3rd. I hereby authorize and direct my executors hereinafter named to divide all of my real estate among my children Ray, Tommie, Lee, Addie, Minnie, Katie, Clara, Dora and my grandson, Carl Wilson, son of my deceased daughter, Nellie Gray Wilson. It is my will and desire that my said real estate not be sold for a division among the aforementioned persons, but that same shall be divided equally and that each shall receive an equal share in valuation of my said real estate; and that when same is equally divided among my said above-named children and grandson, they shall hold their share for their

natural life, and if any of the above-named persons should die without issue, then his or her share shall be divided equally between my heirs, otherwise same is to be equally divided among their heirs at their death."

The testator's personal estate at the time of the hearing was valued at $14,873.37, and his seven tracts of land, consisting of approximately 600 acres, at $91,850.00.

This cause came on for hearing before his Honor and it was agreed in open court that the right of trial by jury was waived and that this action should be heard by the court both as to the law and the facts. The facts found, pertinent to a decision, are hereinafter stated.

That all parties in *esse* and those in *posse* who have or might in the future have any interest or claim in the estate of Love Honbaier, have voluntarily become parties to this action or have been made parties thereto; that all parties in *esse* but not *sui juris*, as well as those in *posse*, are duly represented by guardians *ad litem* who have filed answers in their behalf; and the court held, "That all parties in interest are duly and properly before the court in such a manner as to be bound by the decree of court and are properly represented by counsel in the action and at this hearing."

The court further found, "That there is a *bona fide* dispute among the devisees of Love Honbaier as to the mental capacity of the said testator at the time of the execution of his will; that Jesse Ray Honbaier, Clara Honbaier Taylor and Tommie Lee Honbaier, Sr., Addie Honbaier Lyerly and Minnie Honbaier Warren, five of the devisees, have threatened to file a caveat to the said will; that local and out-of-town attorneys have been consulted and are now ready to file a caveat on the basis of the testamentary incompetency of testator to execute the said will; that on the advice of such attorneys the threatening caveators have active support of more than 30 witnesses who will testify to the mental incompetency of the said Love Honbaier at the time he made his will; that the dispute revolving around the testator's testamentary capacity is a *bona fide* dispute and that the parties thereto are making adverse contentions in good faith; that the determination of the rights of the parties by litigation would be long, expensive and wasteful; that the result of the trial in Superior Court would be uncertain; that the losing parties would doubtless appeal to the Supreme Court; that further trials might be necessary before reaching a conclusion to the caveat issue, if litigated;

"That if said caveat proceedings were begun it would act as a constant barrier to the establishment of family harmony; that the trial of said case would undoubtedly attract wide attention and publicity and would tend to expose to public gaze intimate family affairs which

should be guarded within the family circle; that such a trial would further disrupt and tend to destroy the peace, honor and dignity of the family, resulting in the embarrassment and humiliation of the members thereof; and that such a trial would plunge the family into litigation which would, without question, extend for a long period of time and be attended by an enormous amount of expense, uncertainty and risk.

"That if the caveat proceedings were successful and the will of the testator were set aside, the eight named devisees would receive the full estate of the testator, share and share alike under the laws of the intestate succession; that in such an event, all minor parties to this action and all parties to this action in *posse* would receive nothing; that the greatest risk of receiving nothing in the caveat proceedings would be taken by such minor parties and parties in *posse*.

"That the language used by testator in paragraph 3 of his will raises legal doubt as to the title to all of the land embraced in the testator's estate; that said language is susceptible of two interpretations, one of which will vest the title to all of testator's land presently and the other of which will delay the ultimate vesting until the successive deaths of all of the eight named devisees."

The parties to the proposed family settlement agreement seek to have the court authorize the Clerk of the Superior Court of Rowan County, North Carolina, to appoint a commissioner to sell the testator's real estate, subject to confirmation of the respective sales by the said Clerk of the Superior Court, and to authorize the commissioner to make conveyances of title, free and clear of all restrictions or complications of testator's will.

It is further provided in the family settlement agreement:

"That the commissioner, after payment of the costs of each and every sale as taxed by the Clerk of the Superior Court of Rowan County, shall pay over to the Wachovia Bank and Trust Company as trustee, immediately upon the filing of the commissioner's final report, five per cent (5%) of all of the money remaining in his hands, which five per cent (5%) shall constitute a part of the corpus of the trust herein provided for."

It is likewise provided that the executors be required to pay in to the trust fund five per cent of any of the amounts remaining in their hands as co-executors at the time of filing their final report, which five per cent shall constitute a part of the corpus of the trust provided for in the family agreement.

"That the said trust together with all accruing income shall be known and designated as the 'Children's Fund' and the said trustee

shall pay out and distribute the 'Children's Fund' from time to time as follows:

"Upon the death of any one of the following persons, namely: (1) Jesse Ray Honbaier, Sr., (2) Dora Honbaier Greene, (3) Katie Honbaier Wagner, (4) Minnie Honbaier Warren, (5) Addie Honbaier Lyerly, (6) Tommie Lee Honbaier, Sr., (7) Clara Honbaier Taylor, (8) Carl Winfred Wilson, the trustee shall pay from the Children's Fund an amount equal to 12.5% of the value of the said Children's Fund at the date of death of the first to die of the named eight persons, which said payment shall be to the lineal issue of the first deceased, per *stirpes;* but should there be no such lineal issue of said first deceased, then said trustee shall divide said amount into equal parts, the number of parts being determined by the number of above-named persons having lineal issue at the date of death of the first to die of the named eight persons, and each equal part as so determined, shall be divided, and paid to, the respective lineal issue, per *stripes*. (Thereafter, as the deaths of the remaining devisees occur, 1/7th, 1/6th, etc. shall be distributed in the manner above set out.)

"That the said commissioner and the said co-executors shall pay absolutely to Jesse Ray Honbaier, Sr., Dora Honbaier Green, Addie Honbaier Lyerly, Minnie Honbaier Warren, Tommie Lee Honbaier, Sr., Katie Honbaier Wagner, Clara Honbaier Taylor and Carl Winfred Wilson, immediately upon the filing of the commissioner's final report and the co-executors' final settlement, respectively, all of the remainder of the moneys in their hands, share and share alike, provided, however, the money payable by the said commissioner to the said eight named persons shall be subject to the just debts, costs and other liabilities of the said estate of the said Love Honbaier."

This proposed family settlement has been signed by all the seven living children of Love Honbaier, as well as by Carl Wilson, the son and only child of Nellie Gray Wilson, the deceased daughter of the testator. The agreement has likewise been signed by all the other twelve grandchildren of Love Honbaier, except two who are minors and represented by guardians *ad litem*. The respective spouses of those signers of the agreement who are married have also signed the agreement.

The findings of fact set out the life expectancy of each of the children of the testator and of the grandson, Carl Wilson. The life expectancy of these eight devisees average 27.23 years. The court found as a fact, "That with an average life expectancy of 27.23 years, the named eight devisees would be entitled, under the Annuity Tables in G.S. 8-47 and on the basis of a 6% return, to receive as their part in the real estate of the testator 78%, or all but 22% if the will were not set

aside; that 22% therefore of the value of the testator's real estate is the maximum that the issue of the named eight could receive under said will; this 22% interest of the issue is subject to being defeated altogether in the event the caveat proceedings are carried to a successful conclusion; that the preservation and establishment of a certain sum equivalent to 5% of the value of the testator's lands at an early date under the family settlement agreement is more desirable from the standpoint of the issue of the named eight than the anticipation of an uncertain 22% at a date possibly years in the future when some conclusive adjudication might be made regarding the respective rights of the issue living and in *posse, inter se,* and after extended and expensive litigation and depreciation in property values."

The court further found, "That the execution and the judicial implementation of the said family settlement agreement will prevent dissipation and waste of the estate of Love Honbaier and will more nearly accomplish the primary objects and effectuate the real intentions of the testator than could be accomplished by a rejection of said family settlement agreement and a relegation of the parties to bitter family strife and long drawn-out litigation."

Whereupon, the court entered judgment approving the family settlement agreement and directing the guardians *ad litem* appointed in this action to sign the agreement on behalf of all persons represented by them; and the court further entered the necessary orders to carry out the terms and provisions of the family settlement agreement.

From the judgment entered, the guardians *ad litem* appeal.

*Graham M. Carlton, W. T. Shuford, Paul G. Stoner, and J. Lee Wilson, attorneys for plaintiffs, appellee.*

*Charles E. Williams, Jr., T. H. Suddarth, Jr., and Hubert E. Olive, Jr., guardians ad litem, for appellants.*

DENNY, J. The only exceptions in the record are those noted by the guardians *ad litem* to the signing of the judgment. These exceptions present the single question whether the facts found by the court below are sufficient to support the judgment. *Merrell v. Jenkins,* 242 N.C. 636, 89 S.E. 2d 242; *Beaver v. Paint Co.,* 240 N.C. 328, 82 S.E. 2d 113; *Paper Co. v. Sanitary District,* 232 N.C. 421, 61 S.E. 2d 378; *Redwine v. Clodfelter,* 226 N.C. 366, 38 S.E. 2d 203.

"Family agreements looking to the advantageous settlement of estates or to the adjustment of family differences, disputes or controversies, when approved by the court, are valid and binding. They are bottomed on a sound public policy which seeks to preserve estates and to promote and encourage family accord. *Spencer v. McCleneghan,*

202 N.C. 662, 163 S.E. 753; *In re Estate of Wright*, 204 N.C. 465, 168 S.E. 664; *Reynolds v. Reynolds*, 208 N.C. 578, 182 S.E. 341; *Bohannon v. Trotman*, 214 N.C. 706, 200 S.E. 852; Schouler, Wills, Executors and Administrators (6d), sec. 3103." *Redwine v. Clodfelter, supra; Fish v. Hanson*, 223 N.C. 143, 25 S.E. 2d 461; *Bailey v. McLain*, 215 N.C. 150, 1 S.E. 2d 372; *In re Will of McLelland*, 207 N.C. 375, 177 S.E. 19; *Tise v. Hicks*, 191 N.C. 609, 132 S.E. 560.

A will is not an instrument, however, to be amended or revoked at the instance of devisees who are merely dissatisfied with its provisions. *Rice v. Trust Co.*, 232 N.C. 222, 59 S.E. 2d 803.

The rule that the law looks with favor upon family agreements does not prevail if the rights of infants are unfavorably affected. *In re Reynolds*, 206 N.C. 276, 173 S.E. 789. Ordinarily, the rights and interest of infants are the guiding star in determining the reasonableness and validity of such instruments. *Redwine v. Clodfelter, supra.* However, as stated in *Tise v. Hicks, supra*, "Family settlements * * * when fairly made, are favorites of the law. * * * They proceed from a desire on the part of all who participate in them to adjust property rights, not upon strict legal principles, however just, but upon such terms as will prevent possible family dissentions, and will tend to strengthen the ties of family affection. The law ought to, and does respect such settlements; it does not require that they shall be made in accord with strict rules of law; nor will they be set aside because of objections based upon mere technicalities."

It is not practical, in the instant case, to set out all the findings of fact found by the court below. These findings, conclusions of law, and the judgment of the court, cover 39 pages of the record. However, upon a careful review of the record, it is evident that it is extremely doubtful that Love Honbaier possessed sufficient mental capacity to make a will on 23 November 1953.

The amount of the trust fund set up for the grandchildren would seem to be rather small; even so, all thirteen of them, except two who are minors, have signed the agreement. There can be no doubt about the legal right of the seven living children of Love Honbaier, and his eleven grandchildren who are *sui juris*, to bind themselves by the proposed family settlement. *Hunter v. Trust Co.*, 232 N.C. 69, 59 S.E. 2d 213. Furthermore, in light of the doubtfulness of the last will and testament of Love Honbaier to withstand a caveat, it would seem to be for the best interest of the minors in *esse*, as well as for those in *posse*, who are represented by guardians *ad litem* in this action, to approve the proposed family settlement agreement.

In the case of *Bailey v. Wilson*, 21 N.C. 182, Gaston, J., in speaking for the Court, said: "It is objected that the agreement of compromise

was wholly voluntary, and that a court of Equity will not enforce its specific execution. Where there is a fair doubt as to the rights of parties, an agreement entered into without fraud, for the compromise of those rights, is not a voluntary agreement, and is a fit subject for the jurisdiction of a court of Equity. * * * Such arrangements are upheld by considerations, affecting the interests of all the parties, often far more weighty than any considerations simply pecuniary."

The judgment of the court below is in all respects
Affirmed.