SIGMUND STERNBERGER FOUNDATION, INC. v. LEAH LOUISE B. TAN-
NENBAUM, JEANNE LOUISE TANNENBAUM, SUSAN MERLE TAN-
NENBAUM, SIDNEY J. STERN, JR., GUARDIAN OF THE ESTATE OF NANCY
BAACH TANNENBAUM, A MINOR; SIDNEY J. STERN, JR., GUARDIAN OF
THE ESTATE OF SIGMUND IAN TANNENBAUM, A MINOR; NORMAN
BLOCK, EXECUTOR OF THE ESTATE OF SIGMUND STERNBERGER, DE-
CEASED; WADE BRUTON, ATTORNEY GENERAL OF THE STATE OF NORTH
CAROLINA; THE CHASE MANHATTAN BANK, NEW YORK, NEW YORK,
TRUSTEE, AND THE UNIVERSITY OF NORTH CAROLINA.

(Filed 22 May 1968.)

**1. Appeal and Error § 26—**

An exception to the signing and the entry of the judgment presents the
question whether error of law appears on the face of the record proper,
which includes whether the facts found or admitted support the judgment
and whether the judgment is regular in form, but the exception does not
present for review the findings of fact or the sufficiency of the evidence
to support them.

**2. Declaratory Judgment Act § 2—**

In this proceeding under the Declaratory Judgment Act the pleadings
and the findings of fact *are held* to show a *bona fide* controversy justici-
able under the Act and that all interested persons are made parties to
the action.

**3. Wills § 15—**

Beneficiaries under a prior paper writing are persons interested within
the purview of G.S. 31-32 and are entitled to file a caveat to a subsequent
instrument probated in common form, notwithstanding they are not heirs
of the deceased and are not named as beneficiaries in the writing they
seek to nullify.

**4. Executors and Administrators § 33—**

The provisions of a will or testamentary trust may be modified by a
family settlement agreement only where there exists some exigency or
emergency not contemplated by the testator.

**5. Infants § 1—**

The courts of this State in their equity jurisdiction have inherent au-
thority over the property of infants and will exercise this jurisdiction
whenever necessary to preserve and protect children's estates and in-
terests.

**6. Executors and Administrators § 33—**

The court will look closely into contracts or family settlements ma-
terially affecting the rights of infants.

**7. Same—**

A *bona fide* agreement by one interested in the estate of a testator to
refrain from contesting the will and to permit its admission to probate is
valid.

**8. Trusts § 6—**

Trustees of a charitable trust created by will have the authority to
enter into a settlement contract beneficial to the trust whereby potential

caveators withdraw their opposition to the will and permit its admission to probate.

**9. Trusts § 4;   Executors and Administrators § 33—**

Where there is a threat to file a caveat which, if successful, would result in severe if not fatal reduction of the *corpus* of a charitable trust provided for in the will, a settlement which preserves a very large part of the estate for the beneficent purposes for which the trust was created is properly approved, since under the circumstances the threat to file the caveat creates an unseen exigency not contemplated by the testator, and the settlement is, therefore, advantageous to the trust.

**10. Executors and Administrators § 33;   Infants § 1**

Judgment of the court approving a settlement which resulted from a *bona fide* threat to file a caveat is held for the best interests of the defendant infant beneficiaries.

**11. Trusts § 4;   Attorney General;   State § 4—**

The State, as *parens patriæ*, through its Attorney General, has the common law right and power to protect the beneficiaries of charitable trusts and the property to which they are or may be entitled.

HUSKINS, J., took no part in the consideration or decision of this case.

APPEAL by defendants T. Wade Bruton, Attorney General of North Carolina, and Sidney J. Stern, Jr., guardian of the estates of Nancy Baach Tannenbaum and Sigmund Ian Tannenbaum, minors from. *Lupton, S.J.,* 11 September 1967 Civil Session of GUILFORD County — Greensboro Division. Docketed and argued as Case No. 695, Fall Term 1967, and docketed as Case No. 687, Spring Term 1968.

Civil action instituted by Sigmund Sternberger Foundation, Inc., under the provisions of the N. C. Uniform Declaratory Judgment Act, G.S. 1-253 *et seq.,* and under the equitable powers of the court in respect to the estates and wills of deceased persons, the estates and interests of minors, the protection of charities, and the settlement of controversies involving such matters, in which plaintiff asked the court for a declaration and decree to determine certain questions arising from a settlement agreement entered into among the parties hereto, except by the Attorney General, in respect to a proposed caveat to the last will and testament of Sigmund Sternberger, deceased, including a codicil thereto, both dated 26 December 1963, which will and codicil have been admitted to probate in common form before the clerk of the Superior Court in Guilford County, North Carolina, on 22 July 1964.

All parties to this proceeding waived trial by jury, and agreed that the judge could find the facts, state his conclusions of law, and render judgment thereon. G.S. 1-184 *et seq.* Further, in open court,

T. Wade Bruton, Attorney General of the State of North Carolina, waived the provisions of G.S. 36-35 respecting notice of the trial of this action.

Judge Lupton's findings of fact, conclusions of law, and judgment based thereon appear on 21½ pages of the record. From a judgment approving and confirming the proposed settlement in all respects entered into among the parties hereto, except by the Attorney General, the details of which settlement will be set out in the opinion, T. Wade Bruton, Attorney General of the State of North Carolina, and Sidney J. Stern, Jr., guardian of the estates of Nancy Baach Tannenbaum and Sigmund Ian Tannenbaum, minors, appeal to the Supreme Court.

*Attorney General T. Wade Bruton and Staff Attorney Mrs. Christine Y. Denson, defendant appellant, pro se.*

*Stern, Rendleman & Clark by Sidney J. Stern, Jr. and David M. Clark for defendant appellant Sidney J. Stern, Jr., Guardian.*

*Cooke & Cooke by Arthur O. Cooke and William Owen Cooke for plaintiff appellee Sigmund Sternberger Foundation, Inc.*

*Jordan, Wright, Henson & Nichols by Welch Jordan for defendant appellee Norman Block, Executor of the Estate of Sigmund Sternberger, Deceased.*

*McLendon, Brim, Brooks, Pierce and Daniels by Hubert Humphrey for defendant appellees Leah Louise Tannenbaum, Jeanne Louise Tannenbaum, and Susan Merle Tannenbaum.*

PARKER, C.J. Judge Lupton entered judgment in this proceeding in which, after reciting that all parties to this proceeding are present in court with their respective counsel of record, and after further reciting that he had heard all the evidence offered by the parties, and had examined all the various stipulations and exhibits introduced into evidence by the parties and had heard argument of counsel, he made the following findings of fact, which we summarize: (1) The nature of the proceeding; (2) all parties are properly before the court; (3) Sigmund Sternberger Foundation, Inc., is a nonprofit charitable corporation, incorporated pursuant to the provisions of Chapter 55A of the General Statutes, and that the said corporation was organized for broad charitable purposes, including the funding of scholarship grants, and the making of pecuniary contributions to churches, educational institutions, community funds, and other charitable organizations, as set forth in its charter; (4) subsequent to its organization, the Sigmund Sternberger Foundation, Inc., was duly approved by the United States Internal Revenue Service as a tax-exempt charitable foundation; (5) Leah Louise B.

Tannenbaum is a niece of the late Sigmund Sternberger and is a resident of Guilford County, and that Jeanne Louise Tannenbaum, Susan Merle Tannenbaum, Nancy Baach Tannenbaum, and Sigmund Ian Tannenbaum are all the children of Leah Louise B. Tannenbaum, and are citizens and residents of Guilford County, and that Jeanne Louise Tannenbaum and Susan Merle Tannenbaum are over 21 years of age, and Nancy Baach Tannenbaum is 18 years of age, and Sigmund Ian Tannenbaum is 16 years of age, and that said minors are represented by their duly appointed, qualified, and acting guardian, Sidney J. Stern, Jr; (6) Norman Block is the duly appointed, qualified, and acting executor of the last will and testament, including the codicil thereto, of Sigmund Sternberger, deceased, and that said Norman Block is a citizen of Guilford County and a licensed attorney; (7) that Wade Bruton is the duly elected, qualified, and acting Attorney General of the State of North Carolina; (8) The Chase Manhattan Bank is a banking corporation organized and existing under the laws of the State of New York, and that said bank is vested with fiduciary powers and is trustee under an *inter vivos* trust agreement executed by and between Sigmund Sternberger and said bank; and (9) the University of North Carolina is a body politic and corporate established by the General Assembly of the State of North Carolina.

After these preliminary findings of fact, Judge Lupton found in substance as follows (the numbering of the paragraphs being ours):

(1) Sigmund Sternberger died on 19 July 1964 at the age of 77 years, a resident of Guilford County, North Carolina, leaving a last will and testament including a codicil thereto, both dated 26 December 1963. The said will and codicil were admitted to probate in the office of the clerk of the Superior Court of Guilford County, North Carolina, on 22 July 1964.

(2) The gross estate of Sigmund Sternberger valued for Federal estate tax purposes as of one year from the date of his death amounted to $5,617,252.76, and consisted of real estate @ $85,000 (A stipulation executed by all counsel in the case states that the value of the real estate was $185,000. The recital in the judgment of $85,000 is manifestly a typographical error.); stocks and bonds @ $4,525,485.71; mortgages, notes, and cash @ $358,494.57; insurance @ $517,850.75; and miscellaneous property @ $30,421.73.

(3) The corporate charter of Sigmund Sternberger Foundation, Inc., granted on 29 April 1955 designated Sigmund Sternberger, Rosa Sternberger Williams (his sister), Jeannette Sternberger Baach (his sister — now deceased); Louis Baach (his brother-in-law — now deceased); and Leah Louise B. Tannenbaum (his niece) as incor-

porators and members, and said persons also constituted the initial Board of Directors. Between 29 April 1955 and 26 November 1963 Sigmund Sternberger made contributions to the Foundation of approximately $80,000. Said corporation was active in carrying out the purposes for which it was formed.

(4)  From early 1955 until his death on 19 July 1964 Sigmund Sternberger employed Norman Block as his personal attorney.

(5)  On 3 November 1962 Sigmund Sternberger executed two revocable *inter vivos* trust agreements, prepared for him by Norman Block as his attorney, between Sternberger, The Chase Manhattan Bank, as trustee, and the members of a Trust Advisory Committee created by each of said trust agreements. One of these two agreements created a trust for the benefit of Leah Louise B. Tannenbaum, and the other created four separate trusts, one for the benefit of each of the four children of Leah Louise B. Tannenbaum. Said beneficiaries were also beneficiaries of the *corpus* of each of their respective trusts. The terms and provisions of said *inter vivos* trusts are set forth in Exhibits 1 and 2 which were introduced into evidence at the trial.

(6)  On 7 November 1962 Sigmund Sternberger executed a last will and testament together with codicil thereto, bearing the same date, both of which were prepared for him by Norman Block as his attorney. Under the provisions of said will and codicil, Sigmund Sternberger bequeathed substantially his entire estate to the *inter vivos* trusts created by him on 3 November 1962, and designated Jeannette S. Baach, Rosa Williams, Leah Louise B. Tannenbaum, Dr. A. J. Tannenbaum, and Norman Block as co-executors of said will. The terms and provisions of said will and codicil are as set forth in Exhibits 3 and 4 which were received in evidence at the trial.

(7)  On 2 November 1963 a corporate meeting of the members of Sigmund Sternberger Foundation, Inc., was held. Sigmund Sternberger, designated in the minutes of said meeting as the only member of the corporation, elected a new Board of Directors of the corporation, the same being: Sigmund Sternberger, Rosa S. Williams, Norman Block, A. L. Meyland, and Robert B. Lloyd, Jr. Messrs. Block, Meyland, and Lloyd each contributed the sum of one dollar ($1.00) to the Foundation and, thereupon, each became a member thereof. Leah Louise B. Tannenbaum, Rosa S. Williams, and Jeannette S. Baach were not aware of this meeting until after the death of Sigmund Sternberger.

(8)  On 14 December 1963 Sigmund Sternberger executed a revocable · *inter vivos* trust agreement, prepared for him by Norman

Block as his attorney, with The Chase Manhattan Bank as trustee. Thereafter, Sigmund Sternberger revoked the two revocable *inter vivos* trusts created by him on 3 November 1962. The trust agreement of 14 December 1963 created six separate trusts with life income beneficiaries for each trust being: Leah Louise B. Tannenbaum, Jeanne Louise Tannenbaum, Susan Merle Tannenbaum, Nancy Baach Tannenbaum, Sigmund Ian Tannenbaum, and Sula B. Davis. The remainder interest in each of these trusts was given to Sigmund Sternberger Foundation, Inc., to hold the same in trust and to use the income therefrom for purposes for which the. Foundation was created. Said gifts of the remainder of each trust were made subject to a contingent gift thereof to the University of North Carolina at Chapel Hill, North Carolina, in the event the Sigmund Sternberger Foundation, Inc., should not be a tax-exempt organization so as to make its receipt of said remainder tax deductible. The terms and provisions of said *inter vivos* trust agreement are as set forth in Exhibit 8 which was received in evidence at the trial.

(9) On 26 December 1963 Sigmund Sternberger executed a last will and testament, together with a codicil thereto, bearing the same date, both of which were prepared for him by Norman Block as his attorney. Said will and codicil of 26 December 1963 revoked the will and codicil of 7 November 1962. Said will and codicil of 26 December 1963 bequeathed legacies of two hundred thousand dollars ($200,000) to each of the six *inter vivos* trusts created by Sigmund Sternberger on 14 December 1963, and after providing for certain specific legacies, bequeathed his entire residuary estate, now having a value in excess of $2,750,000, to Sigmund Sternberger Foundation, Inc., to hold the same in trust and use the income therefrom for its corporate purposes. Said legacy of the residuary estate was made subject to a contingent legacy thereof to the University of North Carolina at Chapel Hill, North Carolina, in the event Sigmund Sternberger Foundation, Inc., should not be a tax-exempt organization so as to make its receipt of said residuary estate tax deductible. Norman Block was designated as the executor of said last will and testament.

(10) In November, 1964, after the will and codicil of 26 December 1963 were admitted to probate on 22 July 1964, Leah Louise B. Tannenbaum, on her own behalf and on behalf of her children, employed William H. Holderness of the firm of McLendon, Brim, Holderness and Brooks of Greensboro, North Carolina, to make an investigation and advise them as to whether a caveat should be filed to said will. Holderness, after investigating the facts and the law, advised Leah Louise B. Tannenbaum and her children that in his

opinion they had a good basis for caveating the will of 26 December 1963, and a substantial likelihood for success.

(11) Between November of 1964 and April of 1965, William H. Holderness conferred several times with Norman Block, executor, in respect to the contentions of the prospective caveators. During this period of time, Norman Block was advised by Holderness that the prospective caveators would abandon their claim upon the payment to them of the sum of $1,000,000 from the assets of the Sigmund Sternberger estate.

(12) Following the death of William Holderness in midsummer of 1965, Norman Block conferred with members of the firm of Mc-Lendon, Brim, Brooks, Pierce and Daniels (formerly McLendon, Brim, Holderness and Brooks), in respect to the proposed caveat proceeding. As a result of these conferences, Norman Block, as executor, employed the firm of Jordan, Wright, Henson and Nichols of Greensboro, North Carolina, to represent him in his capacity as executor of the estate of Sigmund Sternberger, having previously requested that firm to make no commitment which would prevent them from representing him in such capacity.

(13) On 25 March 1966 Messrs. Arthur O. Cooke and William Owen Cooke, attorneys of the firm of Cooke and Cooke, Greensboro, North Carolina, were employed by the Directors as attorneys for the Foundation. At this time, the Board of Directors consisted of Rosa S. Williams, Norman Block, A. L. Meyland, and Robert B. Lloyd, Jr. (Exhibit 17).

(14) On 30 August 1966 Norman Block, A. L. Meyland, Robert B. Lloyd, Jr., Rosa Sternberger Williams, and Leah Louise B. Tannenbaum, each as a member, if a member, and as a director, if a director, and as an officer, if an officer, of the Sigmund Sternberger Foundation, Inc., adopted corporate resolutions duly accepting and approving Rabbi Joseph Asher, Bryce R. Holt, and L. Richardson Preyer as members of Sigmund Sternberger Foundation, Inc., and duly electing each of said persons as a director thereof. Thereupon, said Norman Block, A. L. Meyland, Robert B. Lloyd, Jr., Rosa Sternberger Williams, and Leah Louise B. Tannenbaum each resigned as a member, if a member, as a director, if a director, and as an officer, if an officer, of Sigmund Sternberger Foundation, Inc. Since 30 August 1966, and at the present time, Rabbi Joseph Asher, Bryce R. Holt, and L. Richardson Preyer constitute the only members and all of the officers and directors of the Sigmund Sternberger Foundation, Inc. (Exhibit 18.)

(15)   The new Board of Directors of the Foundation (Messrs. Preyer, Holt, and Asher) were promptly advised by counsel for the Foundation of the controversy existing between Norman Block, executor, and Leah Louise B. Tannenbaum and her children in respect to the validity of the will and codicil of 26 December 1963, and the *inter vivos* trusts of 14 December 1963, and the effect the success or failure of litigation involving such controversy could have on the Sigmund Sternberger Foundation, Inc. Said Directors were advised by the Foundation's counsel that any decision reached by the executor and his attorney in regard to the existing controversy would be submitted to them for their consideration and approval in view of the fact that the Foundation was directly and primarily concerned as the residuary beneficiary of the estate of Sigmund Sternberger, and as remainderman of the trust created under the agreement of 14 December 1963.

(16)   On 25 November 1966 Welch Jordan, attorney for the executor, wrote to counsel for the prospective caveators, with copy to the Foundation's attorneys (Exhibit 19), indicating that since the interests of the Foundation were directly and primarily concerned, it should determine what course of action ought to be taken by the Foundation in respect to the threatened caveat, with its decision in this respect to be subject to the executor's approval. Thereupon, counsel for the Foundation and its Directors immediately undertook a thorough and detailed appraisal of the merits of the proposed caveat proceeding. Conferences were held by counsel for the Foundation with both counsel for the prospective caveators and counsel for the executor, during which the contentions of each of said parties and the evidence available to them in support of their respective contentions were made available. Meetings of the Foundation's Directors were held at which information obtained by its counsel was presented in detail, discussed, and evaluated. In addition, the Directors of the Foundation and their counsel met separately with counsel for the prospective caveators and counsel for the executor at which meetings the positions of each were reviewed in detail. Thereafter, several meetings of the Directors of the Foundation were held at which legal questions involved in the controversy were considered and all the information theretofore made available to them and their counsel was fully discussed and evaluated. This information included statements of medical witnesses, medical reports, detailed hospital records, numerous documents, tax computations and the contentions of the prospective caveators and the executor.

(17)   If the propounder prevailed in the threatened caveat pro-

ceeding, the Foundation would receive the entire residuary estate of Sigmund Sternberger, in trust, under the will of 26 December 1963, now valued in excess of $2,750,000, together with a vested remainder in $1,200,000, likewise in trust, under the *inter vivos* trust of 14 December 1963. If the caveators prevailed in the threatened caveat proceeding and also established the will and codicil of 7 November 1962 as the last will and testament of Sigmund Sternberger, the Foundation would receive only $50,000 (a gift to be made from income during the administration of the estate). If the will and codicil of 26 December 1963 were held to be invalid, and will and codicil of 7 November 1962 were not established as the last will and testament of Sigmund Sternberger, then the estate of Sigmund Sternberger would be distributed to his heirs in accordance with the laws of North Carolina relating to intestate succession. The heirs of Sigmund Sternberger, if he had died intestate, would have been Rosa S. Williams (his sister), Jeannette S. Baach (his sister), Elizabeth S. Weinstein (a niece), and Mildred S. Shavlan (a niece), the latter two being the children of Meyer Sternberger (a brother of Sigmund Sternberger who predeceased him). Jeannette S. Baach died on 17 February 1966. Leah Louise B. Tannenbaum is the daughter of said Jeannette S. Baach. In the event of intestacy, the Sigmund Sternberger Foundation, Inc., would receive nothing from the estate of Sigmund Sternberger.

(18) In the event a caveat proceeding were instituted by the prospective caveators, numerous parties, not parties to this action, would have been necessary parties thereto. The cost of such a proceeding, regardless of the outcome, including attorneys' fees for counsel for the numerous parties, would be borne by the estate of Sigmund Sternberger. Such litigation, in view of the evidence before the court, would be protracted, hotly contested, and undoubtedly result in a substantial diminution of the assets of the estate of Sigmund Sternberger. This cost would result in substantial diminution of the residuary estate ultimately received by the Sigmund Sternberger Foundation, Inc., even though the propounder prevailed.

(19) In the event no settlement had been reached in respect to the controversy relating to the validity of the will and codicil of 26 December 1963, a proceeding to caveat said will would have been instituted by Leah Louise B. Tannenbaum and her children.

(20) The information contained in findings of fact Nos. 16 through 19 above was available to and considered by counsel for the Sigmund Sternberger Foundation, Inc., and by all of its Directors during the period said Directors and counsel for the Foundation un-

dertook to evaluate the position of the Foundation in respect to the existing claim of the prospective caveators and determine what course of action would be in the best interest of the Foundation.

(21)    As a result of all the information available to them relating to the position of the Sigmund Sternberger Foundation, Inc., as it might be affected by a caveat proceeding involving the will and codicil of 26 December 1963, the Directors of the Foundation unanimously reached the conclusion that the best interests of the Foundation would be served by a settlement of the existing controversy provided such settlement could be achieved upon a basis commensurate with the best interests of the Foundation under all the circumstances as they then existed.

(22)    After careful and deliberate consideration of all of the factors involved, the Board of Directors of the Foundation unanimously authorized the attorneys for the Foundation to transmit a proposal for settlement to counsel for the prospective caveators. The terms of said proposal were as set forth in Exhibit 30 which was introduced in evidence at the trial. This proposal for settlement was made with the understanding that unless such proposal were acceptable substantially as made, the prospective caveators could proceed with the institution of a caveat proceeding. The proposal contemplated the execution of a contract under the terms of which the Foundation bought its peace directly with the prospective caveators, thereby eliminating the institution of a caveat proceeding.

(23)    The time within which a caveat proceeding involving the will and codicil of 26 December 1963 could be instituted and maintained terminated on 22 July 1967, as to all persons *sui juris.* Except for the minor parties to this action, no other persons are known to exist who may now challenge the validity of said will and codicil.

(24)    The proposal for settlement made by the Directors of the Foundation was modified by an agreement relating to income produced after 1 July 1967 on the five $200,000 requests to the *inter vivos* trusts, and on the $400,000 payment to the prospective caveators. As modified, it was accepted by the prospective caveators and consented to and approved by the executor and The Chase Manhattan Bank, trustee. The terms and conditions of said settlement agreement were incorporated into a settlement contract, dated 1 July 1967 (Exhibit 31), which is now before this court for approval. The terms and conditions of said contract are as set forth in Exhibit 31 which was introduced in evidence at the trial.

(25)    Each of the Directors of the Foundation is of the opinion

that the execution and performance of said contract in accordance with its terms is for the best interest of the Foundation.

(26) The performance of the settlement contract before the court results in the estate of Sigmund Sternberger being administered and distributed in accordance with the terms and provisions of the will and codicil executed by him on 26 December 1963, except for the modifications relating to the disposition of a part of the net residuary estate after it is received by the Sigmund Sternberger Foundation, Inc., as provided in said contract. The execution and performance of said contract avoids the trial of a caveat proceeding and, insofar as the relatives of testator are concerned, including the minor parties to this action, lays to rest forever the need for public disclosure of matters of an intra-family nature which are best left unexposed.

(27) Sidney J. Stern, Jr., as guardian of the estates of Nancy Baach Tannenbaum and Sigmund Ian Tannenbaum, conferred with counsel for the Foundation, counsel for the prospective caveators, and counsel for the executor in order to familiarize himself thoroughly with the controversy which existed. In addition, he reviewed all of the medical evidence and documents relating to said controversy, including computations reflecting the various results insofar as his wards were concerned which would be achieved by a successful caveat, an unsuccessful caveat, or a settlement of the controversy in accordance with the provisions of the contract. In the event a caveat were successful and the will and codicil of 7 November 1962 were established as the last will and testament of sigmund Sternberger, and the *inter vivos* trusts of 3 November 1962 became effective, each of said minor children would receive one-sixth of the net residuary estate, less one-sixth of the cost of the caveat proceeding (which would be paid by the estate), such legacy being subject to the trust of 3 November 1962, and valued at some amount less than $350,000. In the event the propounder prevailed, each minor child would receive a life income interest in $200,000, with the remainder interest in the *corpus* belonging to the Sigmund Sternberger Foundation, Inc. Should the result of litigation be such that the estate of Sigmund Sternberger be distributed in accordance with the North Carolina laws of intestate succession, said minor children would receive nothing from said estate. Under the terms of the settlement contract, each such child retains his or her interest in the $200,000 trust and received $100,000 in addition thereto. As a result of his detailed investigation, Sidney J. Stern, Jr., as guardian, is of the opinion that the execution and performance of said contract is in the

best interest of each of his wards. Said guardian is a highly competent and experienced attorney who has been practicing at the Greensboro Bar for approximately thirty years.

(28) The parents of the minor parties hereto are of the opinion that the execution and performance of the settlement contract is for the best interest of their said minor children, and such approval was evidenced after full discussion of said settlement with their counsel and the guardian of the estates of said minor children.

(29) In order that this court might be advised of the nature, extent, and character of the controversy regarding the will and codicil thereto of Sigmund Sternberger, dated 26 December 1963, evidence pertaining thereto was introduced by the prospective caveators and by the executor. The executor introduced evidence, including expert medical opinions, tending to show that Sigmund Sternberger had sufficient mental capacity to execute a will on 26 December 1963. The executor also introduced evidence tending to show that no undue influence was exerted upon Sigmund Sternberger by any person at any time, that all documents executed by him were his free and voluntary act and deed, and they were all prepared in accordance with his directions and reflected in every respect his individual wishes and desires. The prospective caveators, on the other hand, introduced evidence, including expert medical opinions, which tended to show that at the time said will and codicil were executed by Sigmund Sternberger, he did lack sufficient mental capacity to execute a will and that said will and *inter vivos* trust agreement of 14 December 1963 resulted from undue influence exercised upon Sigmund Sternberger. Additionally, the prospective caveators contended that a presumption of undue influence by his attorney arose as a matter of law from the facts as disclosed by evidence before the court. The evidence introduced by the prospective caveators and the evidence introduced by the executor was in sharp conflict and would have been available to each in the trial of a caveat proceeding if such had been filed.

(30) The controversy which existed between Leah Louise B. Tannenbaum and her children, on the one hand, and said executor and Foundation, on the other, was genuine and was a *bona fide* controversy. If a caveat had been filed to the will and codicil thereto of Sigmund Sternberger dated 26 December 1963, the outcome of such caveat proceeding would have been in doubt to such an extent that it is advisable for Nancy Baach Tannenbaum, minor, Sigmund Ian Tannenbaum, minor, Sigmund Sternberger Foundation, Inc., as trustee of a charitable trust and as a charitable corporation and The

Chase Manhattan Bank as trustee under the agreement dated 14 December 1963 to accept the benefits which each will receive under the terms and provisions of said contract of settlement rather than to run the risk of the more serious consequences that would result from a verdict adverse to them in a caveat proceeding.

(31) The settlement proposed by the terms and provisions of the contract of settlement presented to this court for approval will promote the best interest of Nancy Baach Tannenbaum and Sigmund Ian Tannenbaum, respectively, and their respective estates. It also will promote the best interest of the Sigmund Sternberger Foundation, Inc., as the trustee of a charitable trust and as a charitable corporation, and the best interest of The Chase Manhattan Bank as the trustee of the trusts created by said agreement of 14 December 1963, and the best interest of the public at large, and the best interest of the estate of Sigmund Sternberger.

(32) The settlement proposed by the terms and provisions of the contract of settlement presented to this court for approval is fair and reasonable insofar as the interests of the parties to said contract are concerned and insofar as the interests of the public at large are concerned.

Based upon his findings of fact, Judge Lupton made the following conclusions of law, which we quote verbatim:

"(1) That this court has jurisdiction of the subject matter of this action and of the parties to this action.

"(2) That the settlement contract which is before this court for approval and which was introduced in evidence at the trial of this action as Exhibit 31 is a valid and enforceable contract.

"(3) That Sigmund Sternberger Foundation, Inc., is a charitable, nonprofit corporation and as such has the power and authority to enter into and perform, according to its terms, said settlement contract.

"(4) That Sigmund Sternberger Foundation, Inc., in its fiduciary capacity as a trustee of a charitable trust, has the power and authority to enter into and perform, according to its terms, said settlement contract.

"(5) That it is proper and permissible for Sigmund Sternberger Foundation, Inc., both as a charitable, nonprofit corporation and in its fiduciary capacity as a trustee of a charitable trust, to enter into and perform, according to its terms, said settlement contract.

"(6)    That the execution and performance of said settlement contract is for the best interest of Sigmund Sternberger Foundation, Inc.

"(7)    That Sidney J. Stern, as guardian of the Estates of Nancy Baach Tannenbaum and Sigmund Ian Tannenbaum, minors, has the power and authority to enter into, execute, and perform, according to its terms, said settlement contract on behalf of his minor wards.

"(8)    That it is proper and permissible for Sidney J. Stern, Jr., as Guardian of the Estates of Nancy Baach Tannenbaum and Sigmund Ian Tannenbaum, minors, to enter into, execute, and perform, according to its terms, said settlement contract on behalf of his minor wards.

"(9)    That the execution and performance of said settlement contract by Sidney J. Stern, Jr., as Guardian of the Estates of Nancy Baach Tannenbaum and Sigmund Ian Tannenbaum, minors, is for the best interest of each of said minors and their respective estates.

"(10)    That The Chase Manhattan Bank, Trustee of the *inter vivos* trusts created by Sigmund Sternberger, dated December 14, 1963, has the power and authority to execute, consent to, and approve the execution and performance of said settlement contract.

"(11)    That the execution, consent, and approval of said settlement contract is in the best interest of The Chase Manhattan Bank Trustee of the *inter vivos* trusts created by Sigmund Sternberger, dated December 14, 1963.

"(12)    That Norman Block, as Executor of the Last Will and Testament, including the Codicil thereto, of Sigmund Sternberger, dated December 26, 1963, has the power and authority to enter into and execute and perform said settlement contract.

"(13)    That the execution and performance of said settlement contract by Norman Block, Executor, is proper and permissible.

"(14)    That the execution and performance of said settlement contract by Norman Block, Executor, is for the best interest of the Estate of Sigmund Sternberger.

"(15)    That the execution and performance of said settlement contract is for the best interest of the Attorney General of

North Carolina as the designated representative of the public at large and for the best interest of the public at large."

Based upon his findings of fact and conclusions of law, Judge Lupton ordered, adjudged, and decreed as follows; which we quote verbatim:

"(1) The settlement contract introduced in the trial of this action as Exhibit 31 is hereby, in all respects, approved and confirmed.

"(2) The execution of said settlement contract by the Sigmund Sternberger Foundation, Inc., is hereby, in all respects, approved and confirmed and said Sigmund Sternberger Foundation, Inc., is authorized and empowered to perform said settlement contract according to its terms.

"(3) The execution of said settlement contract by Sidney J. Stern, Jr., as Guardian of the Estates of Nancy Baach Tannenbaum and Sigmund Ian Tannenbaum, respectively, is hereby, in all respects, approved and confirmed and said Guardian is hereby authorized and empowered to perform said settlement contract according to its terms on behalf of each of his minor wards.

"(4) The execution of said settlement contract by the Chase Manhattan Bank as Trustee of the *inter vivos* trust created by Sigmund Sternberger on December 14, 1963, is hereby, in all respects, approved and confirmed and said Trustee is authorized and empowered to perform said settlement contract according to its terms.

"(5) The execution of said settlement contract by Norman Block as Executor of the Estate of Sigmund Sternberger, deceased, is hereby, in all respects, approved and confirmed and said Executor is authorized and empowered to perform said settlement contract according to its terms.

"(6) The costs of this action to be taxed by the Clerk shall be paid by the Sigmund Sternberger Foundation, Inc."

In this case there are two appellants, Sidney J. Stern, Jr., guardian of the estates of Nancy Baach Tannenbaum and Sigmund Ian Tannenbaum, minors, and the Attorney General of the State of North Carolina. Sidney J. Stern, Jr., guardian, has one assignment of error and that is to the signing and entry of the judgment. The Attorney General of the State of North Carolina has one assign-

ment of error and that is to the signing and the entry of the judgment.

The sole assignment of error of Sidney J. Stern, Jr., guardian, and of the Attorney General of the State of North Carolina present the question whether error of law appears on the face of the record proper, which includes whether the facts found or admitted support the judgment, and whether the judgment is regular in form. The sole assignment of error here for each appellant does not present for review the findings of fact or the sufficiency of the evidence to support them. *Highway Com. v. Reynolds Co.*, 272 N.C. 618, 159 S.E. 2d 198; *Trust Co. v. Buchan*, 256 N.C. 142, 123 S.E. 2d 489; *Moore v. Owens*, 255 N.C. 336, 121 S.E. 2d 540; 1 Strong, N. C. Index 2d, Appeal and Error, § 26.

Sidney J. Stern, Jr., guardian of the two infant appellants, states in his brief: "As we view the case, three basic questions are raised by this record: (1) Whether the contract is valid and enforceable; (2) whether the contract is fair and in the best interests of the infant parties to it; and (3) whether the directors of a charitable corporation may enter and perform such a contract?"

The Attorney General in his brief contends that the Sigmund Sternberger Foundation, Inc., has no power to use charity funds to "buy its peace" in this case.

The pleadings here and the findings of fact show a *bona fide* controversy justiciable under our Declaratory Judgment Act. It appears that the trustees and all parties interested are made parties to the action. *Haley v. Pickelsimer*, 261 N.C. 293, 134 S.E. 2d 697; *Johnson v. Wagner*, 219 N.C. 235, 13 S.E. 2d 419. The Attorney General in his brief admits the existence of a *bona fide* controversy between the parties.

No one of the Tannenbaums with whom the settlement was made would have been an heir of Sigmund Sternberger if he had died intestate. According to the findings of fact, Sigmund Sternberger, prior to the execution of his last will and testament and codicil thereto, both executed on 26 December 1963 and probated in common form, executed on 3 November 1962 two revocable *inter vivos* trust agreements in which Leah Louise B. Tannenbaum and her four children were beneficiaries, and also on 7 November 1962 executed a last will and testament and a codicil thereto in which Leah Louise B. Tannenbaum was a beneficiary among others, which will he later revoked. Leah Louise B. Tannenbaum, on her own behalf and on behalf of her children, threatened to file a caveat to Sigmund Sternberger's will and codicil executed on 26 December 1963 and if she prevailed in that suit, she threatened to publish the last will and codicil of 7

November 1962 as the last will and testament of Sigmund Sternberger. The Tannenbaums were empowered to file a caveat in this proceeding for the reason, as held in *In re Will of Belvin*, 261 N.C. 275, 134 S.E. 2d 225, that beneficiaries under a prior paper writing are persons interested within the purview of G.S. 31-32 and are entitled to file a caveat to a subsequent instrument probated in common form, notwithstanding they are not heirs of the deceased and are not named as beneficiaries in the writing they seek to nullify.

The contract of settlement here changes to some extent the dispositive provisions of the testator's last will and testament and codicil thereto. "A will is not an instrument, however, to be amended or revoked at the instance of devisees who are merely dissatisfied with its provisions." *Wagner v. Honbaier*, 248 N.C. 363, 103 S.E. 2d 474.

The contract of settlement here relates to a testamentary trust, and the rights of infants are affected. The following basic legal conclusions are controlling: (1) The will creating the trust is not to be treated as an instrument to be amended or revoked at the desire of the devisees or to be sustained *sub modo* "after something has been sweated out of it for the heirs at law." *Redwine v. Clodfelter*, 226 N.C. 366, 38 S.E. 2d 203; *Bailey v. McLain*, 215 N.C. 150, 1 S.E. 2d 372. The power of the court should not be used to direct the trustee to depart from the express terms of the trust, except in cases of an overriding and compelling reason to preserve the trust estate. *Lichtenfels v. Bank*, 268 N.C. 467, 151 S.E. 2d 78; *Cocke v. Duke University*, 260 N.C. 1, 131 S.E. 2d 909; *Penick v. Bank*, 218 N.C. 686, 12 S.E. 2d 253. (2) The courts of this State in their equity jurisdiction have inherent authority over the property of infants and will exercise this jurisdiction whenever necessary to preserve and protect children's estates and interests. The court looks closely into contracts or settlements materially affecting the rights of infants. *O'Neil v. O'Neil*, 271 N.C. 106, 155 S.E. 2d 495; *Redwine v. Clodfelter, supra; In re Reynolds*, 206 N.C. 276, 173 S.E. 789; 4 Strong, N. C. Index 2d, Infants § 1. (3) "A court of equity will not modify or permit the modification of a trust on technical objections, merely because its terms are objectionable to interested parties or their welfare will be served thereby. It must be made to appear that some exigency, contingency, or emergency has arisen which makes the action of the court indispensable to the preservation of the trust and the protection of infants. *Reynolds v. Reynolds, supra* [208 N.C. 578, 182 S.E. 341]; *Cutter v. Trust Co., supra* [213 N.C. 686, 197 S.E. 542]; 65 C.J. 683, sec. 549." *Redwine v. Clodfelter, supra.*

The provisions of a will or testamentary trust may be modified

by a family settlement agreement only where there exists some exigency or emergency not contemplated by the testator. *Rice v. Trust Co.*, 232 N.C. 222, 59 S.E. 2d 803; *Redwine v. Clodfelter, supra.* "Here, the alleged unforeseen exigency or emergency is the filing of the caveat with resulting expensive litigation and drastic and adverse effects upon defendants in the event the 'Will' should not be established." *O'Neil v. O'Neil, supra.* In *O'Neil v. O'Neil*, 271 N.C. 741, 157 S.E. 2d 544, the Court said:

> "After certification of our decision on former appeal, the cause was again heard by Judge McConnell, at which time evidence was offered, which evidence is set forth in the present record, sufficient in our opinion to sustain the finding in the present judgment that '(t)here is a *bona fide* controversy regarding the validity of the paper writing dated October 7, 1964, purporting to be the last will and testament of John C. Barron.' In view of this factual finding, and predicated thereon, we are of opinion, and so decide, that the judgment entered by Judge McConnell on August 31, 1967, approving the 'family settlement agreement' dated January 24, 1967, and modifying in accordance therewith the dispositive provisions of the paper writing dated October 7, 1964, probated in common form as the last will and testament of John C. Barron, deceased, should be, and it is hereby, affirmed."

A contract made by parties, competent to contract honestly, prudently, and in good faith, who are interested, some in establishing the will in question and others in resisting its admission to probate, which is made with the full knowledge of the facts, and without misrepresentation, fraud or deceit, by which the parties agree to withdraw opposition to the will and to permit its admission to probate is generally upheld. This applies to trustees of a private trust. *Wagner v. Honbaier, supra; Hunter v. Trust Co.*, 232 N.C. 69, 59 S.E. 2d 213; *Redwine v. Clodfelter, supra; Bailey v. McLain, supra; Latta v. Trustees of the General Assembly of the Presbyterian Church*, 213 N.C. 462, 196 S.E. 862; *Brewer v. University*, 110 N.C. 26, 14 S.E. 644; *Bailey v. Wilson*, 21. N.C. 182; 4 Page on Wills § 1759 (Lifetime Ed.); 57 Am. Jur., Wills, § 998; 1 Williston on Contracts § 135B (3rd Ed., Jæger); 1 Corbin on Contracts § 140.

This is said in an annotation in 55 A.L.R. 811: "By the great weight of authority, a *bona fide* agreement by one interested in the estate of a testator, to refrain from contesting the will, is valid. It is not void as against public policy, since it lessens litigation; and the forbearance to sue, being a detriment to the promisee, is a suffi-

cient consideration to support promise." Among the numerous cases cited to support the text is our case of *Bailey v. Wilson, supra.*

This is said in III Scott on Trusts § 192 (3rd Ed.):

"But where it is reasonably prudent to compromise a claim, the trustee has power to do so. It is only where he acts in bad faith or imprudently in making such a compromise that he thereby commits a breach of trust. If it is prudent to do so, the trustee can properly submit such claims to arbitration.

\*　　\*　　\*

"If the trustee is in doubt whether he should sue or should compromise or submit to arbitration claims which he holds in trust, he can apply to the court for instructions. The court has power to approve compromise or arbitration agreements which in its opinion are beneficial to the trust."

This is said in IV Scott on Trusts § 380 (3rd Ed.):

". . . The trustees of a charitable trust, like the trustees of a private trust, can properly compromise or submit to arbitration claims by or against third persons."

The proposed settlement according to the unchallenged detailed findings of fact was caused by a threatened filing of a caveat to Sigmund Sternberger's last will and testament and codicil thereto dated 26 December 1963 and probated in common form, which was an unseen exigency or emergency because the filing of a caveat would result in expensive and protracted litigation and heavy cost to the Sigmund Sternberger Foundation, Inc., and drastic, if not annihilating, effects upon the property of the Foundation in the event that Sigmund Sternberger's last will and testament and codicil thereto should not be established in the trial. According to the unchallenged finding of fact. "the performance of the settlement contract before the court results in the estate of Sigmund Sternberger being administered and distributed in accordance with the terms and provisions of the Will and Codicil executed by him on December 26, 1963, except for the modification relating to the disposition of a part of the net residuary estate after it is received by the Sigmund Sternberger Foundation, Inc., as provided in said contract." In our opinion, and we so hold, from the unchallenged findings of fact in the record, the Directors of the Sigmund Sternberger Foundation, Inc., had authority to enter into and perform the contract settlement, that the contract settlement was valid and enforceable, and that it was manifestly for the best interests of the Sigmund Sternberger Foundation, Inc., for the reason that, it preserves a very large part of the estate for

the beneficent purposes for which the Foundation was created, which settlement has been approved by the trial court.

An unchallenged finding of fact is:

> ". . . In the event a caveat were successful and the Will and Codicil of November 7, 1962, were established as the Last Will and Testament of Sigmund Sternberger, and the *inter vivos* trusts of November 3, 1962, became effective, each of said minor children would receive one-sixth of the net residuary estate, less one-sixth of the cost of the caveat proceeding (which would be paid by the Estate), such legacy being subject to the trust of November 3, 1962, and valued at some amount less than $350,000.00. In the event the propounder prevailed, each minor child would receive a life income interest in $200,000.00, with the remainder interest in the *corpus* belonging to the Sigmund Sternberger Foundation, Inc. Should the result of litigation be such that the estate of Sigmund Sternberger be distributed in accordance with the North Carolina laws of intestate succession, said minor children would receive nothing from said estate. Under the terms of the settlement contract, each such child retains his or her interest in the $200,000.00 trust and received $100,000.00 in addition thereto. As a result of his detailed investigation, Sidney J. Stern, Jr., as Guardian, is of the opinion that the execution and performance of said contract is in the best interest of each of his wards. Said Guardian is a highly competent and experienced attorney who has been practicing at the Greensboro Bar for approximately thirty (30) years."

It is our opinion, and we so hold, from a careful examination and study of the unchallenged findings of fact, the conclusions of law, and the judgment that the settlement approved by the trial judge was for the best interests of the infant defendants, and protects their interests.

This is also stated as an unchallenged finding of fact:

> "The parents of the minor parties hereto are of the opinion that the execution and performance of the settlement contract is for the best interest of their said minor children, and such approval was evidenced after full discussion of said settlement with their counsel and the Guardian of the Estates of said minor children."

We are confirmed in our opinion by the eminence of experienced counsel and others who participated in the proposed settlement. The present Directors of the Sigmund Sternberger Foundation, Inc., are

Rabbi Joseph Asher; L. Richardson Preyer, a former judge of the Superior Court of this State and a former United States District Judge who resigned to run for Governor; and Bryce R. Holt, a lawyer of great experience and a former United States District Attorney. The lawyers who participated in the proposed settlement, Cooke & Cooke; Norman Block; McLendon, Brim, Brooks, Pierce & Daniels; Jordan, Wright, Henson & Nichols; Smith, Moore, Smith, Schell & Hunter; Stern, Rendleman & Clark — all counsel of record in the trial court, and many of counsel here — are among the foremost lawyers in North Carolina for character and professional ability. The record is replete with their careful protection of the interests of their clients, and we are confident that none of them would have participated in a settlement that did not protect the interests of the infant defendants.

In fairness to Sidney J. Stern, Jr., we quote the last paragraph from his brief, which is as follows:

> "The result of the contract in the case involved here is substantially to preserve the charitable trust intact against a proposed dangerous caveat which, if successful, would destroy the trust and, even if unsuccessful, might well end in costing the Foundation more than does the fulfillment of the contract. There is nothing in the corporate charter, by-laws, or other governing documents of the corporation which would prevent the fulfillment of the contract if court approval is obtained. We believe that this contract is so manifestly in the best interests of the charitable corporation that the directors not only had the power and authority to enter into the contract, but they would have been derelict in their duty had they not done so. However, because of the extreme importance of this matter to the parties and to the public generally, we feel that the contract should receive the approval of this Court."

We agree with Mr. Stern's statement that because of the extreme importance of this matter to the parties and to the public generally the contract of settlement should receive the approval of this Court.

The Attorney General in his brief raises the question as to his right to intervene in this proceeding to approve a settlement where a charitable trust is the main beneficiary. G.S. 36-35 provides that where an action is pending against a trustee of a charitable trust, the Attorney General must be notified before disposition may be made of the case. It is not necessary for us to determine the question the Attorney General raises here to reach a decision in this case. It seems that the State as *parens patriæ*, through its Attorney General,

has the common law right and power to protect the beneficiaries of charitable trusts and the property to which they are or may be entitled. Tudor, Charitable Trusts at 323; *Cook v. Duckenfield*, 2 Atk. 562, 26 Eng. Rep. 737 (1743).

This is said in 15 Am. Jur. 2d, Charities, § 119:

> "Because of the public interest necessarily involved in a charitable trust or gift to charity and essential to its legal classification as a charity, it is generally recognized that the attorney general, in his capacity as representative of the state and of the public, is the, or at least a, proper party to institute and maintain proceedings for the enforcement of such a gift or trust."

If the Attorney General is not a necessary party, he surely is a proper party.

The trial judge's unchallenged detailed findings of fact support his conclusions of law, which are correct, and his findings of fact and conclusions of law amply support his judgment, and his judgment is in proper form. No error of law appears on the face of the record proper.

The judgment below is in all respects

Affirmed.

HUSKINS, J., took no part in the consideration or decision of this case.