IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA19-792

Filed: 3 March 2020

Sampson County, No. 15-E-546

IN THE ESTATE OF:

DAVID MAC GIDDENS

Appeal by Respondents from order entered 23 May 2019 by Judge Mary Ann Tally in Sampson County Superior Court. Heard in the Court of Appeals 4 February 2020.

> *Daughtry, Woodard, Lawrence & Starling, by Luther D. Starling, Jr., for Petitioner-Appellee.*
>
> *Gregory T. Griffin for Respondents-Appellants.*

INMAN, Judge.

This case concerns whether a decedent's estate, with the agreement of the administrator and all beneficiaries, can use surplus proceeds from the sale of real property to satisfy a deficiency judgment awarded to the surviving spouse for her statutory allowance. Even though two of the beneficiaries had a change of heart prompting this appeal, we affirm the trial court's enforcement of that agreement.

Respondents Allen Mac Giddens and Tonya Giddens Brown ("Respondents") appeal from the trial court's order vacating an order of the Sampson County Clerk of Superior Court and authorizing the use of proceeds from the sale of real property to

satisfy a spousal allowance deficiency judgment awarded to Petitioner Betty Jean Giddens ("Petitioner"). Respondents contend that a deficiency judgment for a spousal allowance can never be paid out of proceeds from the sale of real estate. After careful review, we disagree and affirm the trial court.

## I.  FACTUAL AND PROCEDURAL HISTORY

Petitioner's husband and Respondents' father, David Mac Giddens, died intestate on 30 September 2015. Petitioner, who was also the administrator of her husband's estate (the "Estate"), requested her $30,000 statutory year's allowance as the surviving spouse pursuant to N.C. Gen. Stat. § 30-15 (2017).[1] That statute authorizes the surviving spouse of a decedent to claim an allowance "out of the personal property of the deceased spouse[.]"[2] *Id.*

The personal property in the Estate was insufficient to satisfy Petitioner's full allowance, so the clerk of superior court entered a deficiency judgment for the unsatisfied amount of $13,030.00 (the "Deficiency Judgment"). That Deficiency

---

[1] The amount of the statutory spousal allowance was raised to $60,000 in 2019. N.C. Gen. Stat. § 30-15 (2019).

[2] A surviving spouse may elect to receive an allowance of $60,000 outright, N.C. Gen. Stat. § 30-15 (2019), or may request a calculation of an allowance "sufficient for the support of petitioner according to the estate and decedent." N.C. Gen. Stat. § 30-31 (2019). That calculation must consider other persons entitled to any allowances and may not exceed one half of the deceased's average annual income for the past three years. N.C. Gen. Stat. § 30-31. The allowance itself "is designed to furnish members of the decedent's family a measure of security while the estate is being administered. It is an attempt to meet the daily needs of food and shelter until the estate is distributed." Wiggins, *The Law of Wills and Trusts in North Carolina*, § 15:1(a) (5th ed. 2019).

Judgment was later partially satisfied by an assignment from the Estate of $3,482.70 on 26 July 2016, leaving the final amount of deficiency at $9,547.30.[3]

With no personal property left in the Estate, the only asset available to satisfy its outstanding debts was a tract of real property known as the "Homeplace," which was owned by David Mac Giddens in life and passed in equal one-third undivided interests to Petitioner and Respondents on his death. Counsel for the Estate filed a motion to authorize the sale of the Homeplace and, on 28 December 2017, the clerk entered a consent order recognizing an agreement between Petitioner, Respondents, and the Estate to use the proceeds from the sale to "pay the claims of the Estate of David Mac Giddens and the cost of the administration of the estate."

The Homeplace sold for $50,400 and the co-commissioners of the sale filed a final report and account on 30 August 2018. That report listed $21,568.94 in funds available to "pay claims and costs of the Estate, [the] balance of which will be distributed to the heirs when the Estate is closed, if any[.]"

On 26 October 2018, counsel for the Estate filed a motion with the clerk seeking authorization for the payment of the Deficiency Judgment from those funds, averring that the "$21,568.94 is sufficient to pay all the claims, debts, costs and administration of the Estate, including the [D]eficiency [J]udgment[.]" Respondents opposed the motion, and the clerk denied the Estate's motion in an order entered 22 February

---

[3] A clerical error in the Deficiency Judgment lists the final deficiency as "$9,5470.30" rather than the correct amount of $9,547.30.

2019. The clerk's order cited N.C. Gen. Stat, § 30-18 (2019), which provides that the spousal allowance "shall be made in money or other personal property of the deceased spouse[,]" and concluded that it prohibited the use of the surplus sale proceeds to pay the Deficiency Judgment after quoting the following language from *Denton v. Tyson*, 118 N.C. 542, 24 S.E. 116 (1896):

> [T]he widow will not be entitled to any further payment on her year's support out of money arising from the sale of land. And if the land sold should bring more than is sufficient to pay the proper expenditures of the plaintiff in the course of his administration, the residue will remain real estate.

118 N.C. at 544, 24 S.E. at 116. The clerk's order did not address whether the parties had otherwise agreed to pay the Deficiency Judgment out of the proceeds from the sale of the Homeplace.

The Estate appealed the clerk's ruling to the superior court pursuant to N.C. Gen. Stat. § 1-301.3 (2019) and presented additional evidence to the trial court in a hearing. The trial court entered an order vacating the clerk's order. The trial court concluded that the clerk committed prejudicial error in failing to consider evidence of the agreement between the parties to use the Homeplace sale proceeds "to pay all claims against the Estate, specifically including the [Deficiency J]udgment referenced in Petitioner's motion[.]" The trial court further concluded that the language relied upon by the clerk from *Denton* was non-binding *dicta* and that, in any event, *Denton* was distinguishable. The trial court also made new findings of fact based on the

additional evidence presented at the hearing, including findings that the parties had expressly agreed to satisfy the Deficiency Judgment with the surplus proceeds from the sale of the Homeplace. Having distinguished *Denton* and based on the findings of an express agreement, the trial court allowed the Estate's motion to pay the Deficiency Judgment out of the Homeplace sale proceeds. Respondents now appeal.

## II. ANALYSIS

*A. Standard of Review*

"On appeal to the Superior Court of an order of the clerk in matters of probate, the trial judge sits as an appellate court. . . . The standard of review in this Court is the same as in the Superior Court." *In re Estate of Pate*, 119 N.C. App. 400, 402-03, 459 S.E.2d 1, 2-3 (1995) (citations omitted). Where the appellant asserts error in the findings of fact or conclusions of law made by the clerk in the order appealed, the superior court—and by extension this Court—applies the whole record test. *Id.* The superior court "reviews the Clerk's findings and may either affirm, reverse, or modify them." *Id.* at 403, 459 S.E.2d at 2 (citation omitted); *see also* N.C. Gen. Stat. § 1-301.3(d) (instructing the trial court to review whether the findings are supported by the evidence, whether the conclusions are supported by the findings, and whether the order comports with the conclusions and applicable law). Any "[e]rrors of law are reviewed *de novo*." *Overton v. Camden Cty.*, 155 N.C. App. 391, 393, 574 S.E.2d 157, 160 (2002) (citation omitted). N.C. Gen. Stat. § 1-301.3 also provides that when

reviewing an appeal from the clerk's decision in a probate matter, the trial court may determine whether there was prejudicial error in the exclusion or admission of evidence and may take additional evidence to resolve the pertinent factual issue. N.C. Gen. Stat. § 1-301.3(d).

## B. *Respondents' Appeal*

In their principal brief, Respondents present the following arguments: the prohibition in *Denton* against using proceeds from the sale of real property prohibits the satisfaction of Petitioner's Deficiency Judgment out of the Homeplace sale proceeds, *Denton*'s holding accords with the current year's allowance statutes, and the trial court therefore erred in disregarding *Denton*'s holding. Respondents' principal brief does not challenge the trial court's findings and conclusions that: (1) the clerk committed prejudicial error in excluding evidence of an agreement between the parties to pay the Deficiency Judgment from the sale proceeds; (2) the parties had, in fact, entered into an express agreement to apply the sale proceeds toward the Deficiency Judgment; and (3) the proceeds could be used to satisfy the Deficiency Judgment in accordance with that agreement. Respondents' principal brief also does not contend that the trial court applied the incorrect standard of review to the clerk's order, or that the trial court's order does not conform to the procedure set forth in N.C. Gen. Stat. § 1-301.3.

We acknowledge that Respondents' *reply* brief does challenge the existence and legal effect of the agreement found and enforced by the trial court. But our appellate rules expressly provide that "[i]ssues not presented and discussed in a party's brief are deemed abandoned[,]" N.C. R. App. P. 28(a) (2019), and appellants may not raise new arguments for the first time in their reply briefs. *See, e.g., State v. Triplett*, ___ N.C. App. ___, ___, 810 S.E.2d 404, 407-08 (2018) ("Defendant may not use his reply brief to make new arguments on appeal. A reply brief is not an avenue to correct the deficiencies contained in the original brief." (citations, quotation marks, and alterations omitted)). Respondents' arguments concerning the validity, effect, and application of the agreement are therefore waived. *See, e.g., Hazard v. Hazard*, 46 N.C. App. 280, 283, 264 S.E.2d 908, 910 (1980) (deeming the appellant's argument that a contract was contrary to law and public policy waived when he failed to preserve the argument under the then-applicable appellate rules).

Limiting our review to the issues properly raised by the Respondents, we hold that the express agreement found by the trial court distinguishes this case from *Denton* and we affirm the trial court's judgment as a result.

## *C.* Denton *and Its Application*

It is unsurprising that both the clerk and the trial court considered the applicability of *Denton* to this case, as that opinion appears to be the only appellate decision in this state directly addressing whether proceeds from the sale of real estate

may be used to satisfy a deficiency in a surviving spouse's year's allowance. In *Denton*, a widow claimed her allowance and received all of the estate's personal property and $89.06 in cash from the administrator in partial satisfaction of the allowance. 118 N.C. at 543, 24 S.E. at 116. That payment exhausted the fungible assets of the estate, so the administrator paid $104 in outstanding administration costs and estate debts out of his own pocket. *Id.* The administrator then sought to recoup those expenses by petitioning for the sale of real property that was held by the decedent at his time of death and had since passed to several heirs. *Id.* Those heirs objected, arguing that if the administrator had not exhausted the estate by paying the spousal allowance first, the personal property and cash on hand would have been sufficient to cover the debts owed by the estate. *Id.* Our Supreme Court disagreed with the heirs, holding that the statutory spousal allowance must be paid first and ahead of any creditors. *Id.* at 543-44, 24 S.E. at 116. It then held that the proceeds from the sale of the real property could be used to repay the administrator. *Id.* at 544, 24 S.E. at 116. The Court continued:

> But the widow will not be entitled to any further payment on her year's support out of money arising from the sale of land. And if the land sold should bring more than is sufficient to pay the proper expenditures of the plaintiff in the course of his administration, the residue will remain real estate.

*Id.*

Here, the trial court concluded in its order that the above language was non-binding *dicta*, despite the fact that it receives treatment as black-letter law in various treatises on estate administration in North Carolina. *See, e.g.,* Wiggins, § 15:3 (citing *Denton* for the proposition that proceeds from the sale of real estate may not be used to satisfy a deficiency in a claim for spousal year's allowance). We need not go so far as to declare the quoted passage *dicta*, however, and instead affirm the trial court's order solely because we agree that *Denton* is distinguishable from the facts presented in this case. *Denton* addresses only the statutory rights of a surviving spouse in receiving payment on her year's allowance; it does not determine whether heirs may, by agreement, consent to the use of proceeds from the sale of real estate to pay any deficiency once the estate's other debts have been paid. In other words, *Denton* stands for the singular proposition that a spouse is not entitled *by statute* to the satisfaction of her allowance out of real estate sale proceeds. 118 N.C. at 544, 24 S.E. at 116. So, while *Denton* held that the law will not recognize a *statutory* right to satisfaction of a deficiency out of the sale of real estate, its holding does not prohibit the creation and recognition of a private *contractual* claim to such proceeds where, as here, all other debts of the estate have been satisfied.

As detailed above, the trial court found that the parties expressly agreed that the Estate would pay the Deficiency Judgment from the surplus Homeplace sale

proceeds, and it concluded that such an agreement was enforceable.[4]  Respondents failed to challenge or address those findings and conclusions in their principal brief, and we will not disturb them.  Respondents' only rebuttals—including the contention that such a contract is contrary to law and public policy—are found only in their reply brief and are, per our earlier analysis, waived.

Even if we were to assume, *arguendo*, that Respondents' policy argument was preserved, it would fail on the merits.  As previously explained, nothing in *Denton* restricts the rights of heirs and the estate to agree, by private contract, to settle a year's allowance deficiency judgment in this manner after all debts of the estate have been paid.[5]  Nor are we aware of—and Respondents have not identified—any public policy concern that would prohibit the heirs and estate from mutually agreeing to such an arrangement.  In actuality, our precedents suggest that the opposite is true:

> "Family settlements, . . . when fairly made, and when they do not prejudice the rights of creditors, are favorites of the law. . . . They proceed from a desire on the part of all who participate in them to adjust property rights, not upon strict legal principles, however just, but upon such terms as will prevent possible family dissensions, and will tend to

---

[4] It is unclear from the record whether the agreement was supported by consideration on Petitioner's part. However, Respondents make no argument that the agreement is unenforceable based on a lack of consideration.

[5] The year's allowance statutes, like *Denton*, also do not appear to prohibit parties from contracting as they did here. *See* N.C. Gen. Stat. §§ 30-15 *et seq.* (2019).  Those statutes simply provide that the spousal allowance "shall be made in money or other personal property of the estate of the deceased spouse[,]" N.C. Gen. Stat. § 30-18, and that the clerk shall enter a judgment for any deficiency "to be paid when a sufficiency of such assets shall come into the personal representative's hands." N.C. Gen. Stat. § 30-20.  So, while the year's allowance is "purely statutory[,]" *Broadnax v. Broadnax*, 160 N.C. 432, 433, 76 S.E. 216, 216 (1912), nothing in those statutes prohibits the recognition of the contractually created obligations at play in this case.

strengthen the ties of family affection. The law ought to, and does respect such settlements; it does not require that they shall be made in accord with strict rules of law . . . ." Our Superior Courts will exercise their equity jurisdiction to affirm and approve family agreements when fairly and openly made. . . . Family settlements are almost universally approved.

*In re Will of Pendergrass*, 251 N.C. 737, 742-43, 112 S.E.2d 562, 566 (1960) (quoting *Tise v. Hicks*, 191 N.C. 609, 613, 132 S.E. 560, 562 (1926)). In light of the above, we hold that the trial court acted properly in vacating the clerk's order and allowing the Estate's motion to satisfy the Deficiency Judgment out of the surplus Homeplace sale proceeds.

## III. <u>CONCLUSION</u>

For the foregoing reasons, we affirm the order of the trial court vacating the clerk's order, allowing the Estate's motion, and remanding for further proceedings.

AFFIRMED.

Judges BRYANT and DILLON concur.